NIGHT BOX
FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

AUG 3 0 2004

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### CASE NO. 03-20588-CIV-MOORE-O'SULLIVAN

| | |
|---|---|
| DONATO DALRYMPLE, | ) |
| | ) |
| and | )     **AMENDED COMPLAINT;** |
| | )     **DEMAND FOR JURY TRIAL** |
| HECTOR S. ABELAIRAS, | ) |
| MIGUEL ALEJANDRO, | ) |
| GREGORY PAUL ALLEN, | ) |
| ABEL RAMON ALONSO, | ) |
| NATALIE ALONSO, a minor, | ) |
| NICOLE ALONSO, a minor, | ) |
| TANAY ALONSO, | ) |
| LESLIE ALVAREZ, | ) |
| ELSA ANDERSON, | ) |
| GUILLERMO ARCE, | ) |
| JOEL BELTRAN, | ) |
| TERESA BENITEZ, | ) |
| CONCEPCION MARIA CABRAL, | ) |
| NANCY CANIZARES, | ) |
| ARTURO CASTELLANOS, | ) |
| BLANCA NIEVES CHILS, | ) |
| JUAN FRANCISCO CHILS, | ) |
| MILAGROS CRUZ, | ) |
| COSME DAMIAN DIAGO, | ) |
| DARIANNE DIAGO, a minor, | ) |
| IDAIL DIAGO, | ) |
| RAMON DIAGO, | ) |
| NORMA DOMINGUEZ, | ) |
| EVA ESPINOSA, | ) |
| LENIA FERNANDEZ, | ) |
| OSMANY FERNANDEZ, | ) |
| PASTERA FERRER, | ) |
| JOSE ANTONIO FREIJO, | ) |
| GILBERTO GALLARRAGA, | ) |
| JOSE L. GARCIA, | ) |
| LEDIA BETANCOURT GARCIA, | ) |
| ROSA GARCIA, | ) |
| RUBEN GARCIA, | ) |
| NIXY GOMEZ, | ) |

CARLOS ALBERTO GONZALEZ,                    )
JOSE A. GONZALEZ,                           )
JOSEFA R. GONZALEZ,                         )
YUSLEIVY GONZALEZ,                          )
ESTRELVA G. GUEVARA,                        )
PABLO HERNANDEZ,                            )
YANET HUET,                                 )
MARTHA TERESITA LARA,                       )
MARIA EUGENIA CABRERA LAZO,                 )
THOMAS A. CAMACHO, a minor,                 )
MARTHA LORENZO,                             )
REINA MACHADO,                              )
ANAISA MACHIN,                              )
MORGAN MARCOS,                              )
ALFREDO MARTELL,                            )
ILEANA L. MARTINEZ,                         )
JOSE L. MARTINEZ,                           )
FELIX R. MEANA,                             )
TROADIO MESA,                               )
MARIO MIRANDA,                              )
JULIO MONDELO,                              )
MARTHA MONDELO,                             )
JORGE A. MORALES,                           )
ARAY NODA,                                  )
ZAIDA NUNEZ,                                )
FRANCISCO ONDARZA,                          )
ROBERTO ORAMA,                              )
MARTHA LINA OROPESA,                        )
ANNA TERESA ORTEGA,                         )
ANTONIO FLORENTINO ORTEGA,                  )
YUSLEDIS ORTIZ,                             )
LAZARO MARTELL, a minor,                    )
MIRIAM PALACIO,                             )
CRISTOBAL PERAZA,                           )
MADELEINE PERAZA,                           )
SERGIO PEREZ-BARROTO,                       )
ANGEL PINA,                                 )
JENNIFER PINA, a minor,                     )
MYRA PINA,                                  )
MELISSA PUMAREGA,                           )
NESTOR RAMOS,                               )
OTONIEL RAMOS,                              )
LEONOR RIVERO,                              )

MARIA A. RIVERON,                            )
PEDRO RIVERON,                               )
EDUARDO RODRIGUEZ,                           )
MANUEL RODRIGUEZ,                            )
MARIA E. RODRIGUEZ,                          )
MARTA RODRIGUEZ,                             )
PATRICIA RODRIGUEZ,                          )
TOMAS A. RODRIGUEZ,                          )
GLORIA SANCHEZ,                              )
ILEANA SANTANA,                             )
ARMANDA SANTOS,                              )
ORLANDO SANTOS,                              )
DIEGO TINTORERO,                             )
CARLOS TRETO,                                )
CARMEN VALDÉS,                               )
DIVALDO VALDÉS, and                          )
MIRIAM A. ZALDIVAR,                          )
                                             )
         Plaintiffs,                         )
                                             )
vs.                                          )
                                             )
UNITED **STATES OF AMERICA,**                )
                                             )
         Defendant.                          )
_____)

Plaintiffs, by counsel, hereby sue the United States of America under the Federal Tort

Claims Act, 28 U.S.C. § 2671, *et seq.*, for negligence, assault and battery, intentional infliction of

emotional distress and negligent infliction of emotional distress. As grounds therefor, Plaintiffs

allege as follows:

## INTRODUCTION

1.      This action arises from the April 22, 2000 pre-dawn raid on the home of Lazaro,

Angela, and Marisleysis Gonzalez in Miami, Florida that seized six-year old Cuban asylum seeker

-3-

Elian Gonzalez from the custody of his U.S. relatives and returned him to Communist-controlled Cuba.

## PARTIES

2.      Plaintiff Donato Dalrymple is a citizen of the State of Florida and resides at 3408 Rose Hill Way, Lauderhill, Florida 33319.

3.      **Plaintiff Hector S. Abelairas** is a citizen of the State of Florida and resides at 690 W 70th Place, Hialeah, Florida 33014.

4       Plaintiff Miguel Alejandro is a citizen of the State of Florida and resides at 1235 W 66th Street, Apt  14, Hialeah, Florida 33012

5.      Plaintiff Gregory Paul Allen is a citizen of the State of Florida and resides at 4143 North Ocean Blvd., Fort Lauderdale, Florida 33308.

6.      **Plaintiff Abel Ramon Alonso** is a citizen of the State of Florida and resides at 16243 SW 83rd Street, Miami, Florida 33193.

7.      Plaintiff Tanay Alonso is a citizen of the State of Florida and resides at 16243 SW 83rd Street, Miami, Florida 33193

8       Plaintiff Natalie Alonso, a minor, is a citizen of the State of Florida and resides at 16243 SW 83rd Street, Miami, Florida 33193

9       Plaintiff Nicole Alonso, a minor, is a citizen of the State of Florida and resides at 16243 SW 83rd Street, Miami, Florida 33193

10      Plaintiff Leslie Alvarez is a citizen of the State of Florida and resides at 6362 SW 138th Path, Miami, Florida 33183

11.     Plaintiff Elsa Anderson is a citizen of the State of Florida and resides at 9801 SW 54 Street, Miami, Florida 33165.

12.     Plaintiff Guillermo Arce is a citizen of the State of Florida and resides at 1335 SW 1st Street, Miami, Florida 33125.

13.     Plaintiff Joel Beltran is a citizen of the State of Florida and resides at 3620 NW 4th Street, Miami, Florida 33125.

14.     Plaintiff Teresa Benitez is a citizen of the State of Florida and a resides at 2720 SW 29th Court, Miami, Florida 33125.

15.     Plaintiff Concepcion Maria Cabral is a citizen of the State of Florida and resides at 735 NW 35th Avenue, Miami, Florida 33125.

16.     Plaintiff Nancy Canizares is a citizen of the State of Florida and resides at 6915 W 14th Court, Hialeah, Florida 33014.

17.     Plaintiff Arturo Castellanos is a citizen of the State of Florida and resides at 10500 NW 35th Court, Miami, Florida 33147.

18.     Plaintiff Blanca Nieves Chils is a citizen of the State of Florida and resides at 2377 NW 2nd Street, Miami, Florida 33125.

19.     Plaintiff Juan Francisco Chils is a citizen of the State of Florida and resides at 2377 NW 2nd Street, Miami, Florida 33125.

20.     Plaintiff Milagros Cruz is a citizen of the State of Florida and resides at 536 SW 4th Street, Apartment #6, Miami, Florida 33130.

21.     Plaintiff Cosme Damian Diago is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #3, Miami, Florida 33125.

22.     Plaintiff Darianne Diago, a minor, is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125.

23.     Plaintiff Idail Diago is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125.

24.     Plaintiff Ramon Diago is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125.

25.     Plaintiff Norma Dominguez is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125.

26.     Plaintiff Eva Espinosa is a citizen of the State of Florida and resides at 301 W 17th Street, Hialeah, Florida 33010.

27.     **Plaintiff Lenia Fernandez is a** citizen of the State of Florida and resides at 2365 SW 11th **Street, Miami, Florida 33135.**

28.     **Plaintiff Osmany Fernandez is a** citizen of the State of Florida and resides at 423 W. 12th Place, Hialeah, Florida 33010.

29      Plaintiff Pastera Ferrer is a citizen of the State of Florida and resides at 4270 SW 97th Avenue, Miami, Florida 33165.

30      Plaintiff Jose Antonio Freijo is a citizen of the State of Florida and resides at 430 SW 6th Avenue, Apartment #6, Miami, Florida 33125.

31.     Plaintiff Gilberto Gallarraga is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Miami, Florida 33125

32      Plaintiff Jose I Garcia is a citizen of the State of Florida and resides at 342 E 20 Street, Hialeah, Florida 33010

-6-

33.    Plaintiff Ledia Betancourt Garcia is a citizen of the State of Florida and resides at 342 E 20 Street, Hialeah, Florida 33010.

34.    Plaintiff Rosa Garcia is a citizen of the State of Florida and resides at 1590 W 2nd Avenue, Hialeah, Florida 33010.

35.    Plaintiff Ruben Garcia is a citizen of the State of Florida and resides at 675 East 23rd Street, Hialeah, Florida 33013.

36.    Plaintiff Nixy Gomez is a citizen of the State of Florida and resides at 451 NW 30th Place, Miami, Florida 33125.

37.    Plaintiff Carlos Alberto Gonzalez is a citizen of the State of Florida and resides at 9997 SW 68th Street, Miami, Florida 33173.

38.    Plaintiff Jose A. Gonzalez is a citizen of the State of Florida and resides at 10330 SW 37th **Terrace, Miami, Florida 33165.**

39.    **Plaintiff Josefa R. Gonzalez** is a citizen of the State of Florida and resides at 10330 SW 37th Terrace, Miami, Florida 33165

40.    Plaintiff Yusleivy Gonzalez is a citizen of the State of Florida and resides at 2336 NW 2nd Street, Miami, Florida 33125.

41.    Plaintiff Estelva G. Guevara is a citizen of the State of Florida and resides at 45 NW24th Court, Miami, Florida 33125.

42.    Plaintiff Pablo Hernandez is a citizen of the State of Florida and resides at 9435 SW 181st Terrace, Miami, Florida 33157

43.    Plaintiff Yanet Huet is a citizen of the State of Florida and resides at 2248 NW 48th Terrace, Miami, Florida 33125

44.     Plaintiff Martha Teresita Lara is a citizen of the State of Florida and resides at 14920 S.W. 178th Terrace, Miami, Florida 33187.

45.     Plaintiff Maria Eugenia Cabrera Lazo is a citizen of the State of Florida and resides at 2271 NW 2nd Street, Miami, Florida 33125.

46.     Plaintiff Thomas A. Camacho, a minor, is a citizen of the State of Florida and resides at 2271 NW 2nd Street, Miami, Florida 33125.

47.     Plaintiff Martha Lorenzo is a citizen of the State of Florida and resides at 1600 SW 1st Avenue, Miami, Florida 33129.

48      Plaintiff Reina A. Machado is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #1, Miami, Florida 33125.

49.     Plaintiff Anaisa Machin is a citizen of the State of Florida and resides at 4390 16th Avenue, NE, Naples, Florida 34120.

50.     Plaintiff Morgan Marcos is a citizen of the State of Florida and resides at 2771 SW 31st Avenue, Miami, Florida 33133.

51      Plaintiff Alberto Martell is a citizen of the State of Florida and resides at 870 SW 3rd Street Apartment #4, Miami, Florida 33130.

52      Plaintiff Ileana Martinez is a citizen of the State of Florida and resides at 697 NW 135th Court, Miami, Florida 33182.

53.     Plaintiff Jose L. Martinez is a citizen of the State of Florida and resides at 4390 16th Avenue, NE, Naples, Florida 34120.

54.     Plaintiff Felix R. Meana is a citizen of the State of Florida and resides at 4261 SW 69th Avenue, Miami, Florida 33155.

55.   Plaintiff Troadio Mesa is a citizen of the State of Florida and resides at 6175 W 20th Avenue, Apartment H307, Hialeah, Florida 33012.

56.   Plaintiff Mario Miranda is a citizen of the State of Florida and resides at 765 NW 126th Court, Miami, Florida 33182.

57.   Plaintiff Julio Mondelo is a citizen of the State of Florida and resides at 140 NW 23rd Avenue, Miami, Florida 33125.

58.   Plaintiff Martha Mondelo is a citizen of the State of Florida and resides at 140 NW 23rd Avenue, Miami, Florida 33125.

59.   **Plaintiff Jorge A. Morales is** a citizen of the State of Florida and resides at 4025 SW. 7th Street, Miami, Florida  33134.

60.   Plaintiff Aray Noda is a citizen of the State of Florida and resides at 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125.

61.   Plaintiff Zaida Nunez is a citizen of the State of Florida and resides at 5700 SW 108th Court, Miami, Florida 33173.

62.   Plaintiff Francisco Ondarza is a citizen of the State of Florida and resides at 9980 SW 71st Avenue, Miami, Florida 33156.

63.   Plaintiff Roberto Orama is a citizen of the State of Florida and resides at 2538 Washington Street, Hollywood, Florida 33024.

64.   Plaintiff Martha Lina Oropesa is a citizen of the State of Florida and resides at 1043 NW 133 Court, Miami, Florida 33182

65.   Plaintiff Anna Teresa Ortega is a citizen of the State of Florida and resides at 947 Lenox Avenue, Miami Beach, Florida  33139

66.     Plaintiff Antonio Florentino Ortega is a citizen of the State of Florida and resides at 3520 NW 79th Street, Miami, Florida 33147.

67.     Plaintiff Yusledis Ortiz is a citizen of the State of Florida and resides at 870 SW 3rd Street, Apartment #4, Miami, Florida 33130.

68.     Plaintiff Lazaro Martell, a minor, is a citizen of the State of Florida and resides at 870 SW 3rd Street, Apartment #4, Miami, Florida 33130.

69.     Plaintiff Miriam Palacio is a citizen of the State of Florida and resides at 2515 NW 32nd Street, Miami, Florida 33142.

70.     Plaintiff Cristobal Peraza is a citizen of the State of Florida and resides at 946 NW 135th Street, Miami, Florida 33182.

71.     Plaintiff Madeleine Peraza is a citizen of the State of Florida and resides at 946 NW 135th Street, Miami, Florida 33182.

72.     Plaintiff Sergio Perez-Barroto is a citizen of the State of Florida and resides at 2352 NW 2nd Street, Miami, Florida 33125.

73.     Plaintiff Angel Pina is a citizen of the State of Florida and resides at 2354 NW 2nd Street, Miami, Florida 33125.

74.     Plaintiff Jennifer Pina, a minor, is a citizen of the State of Florida and resides at 2354 NW 2nd Street, Miami, Florida 33125.

75.     Plaintiff Myra Pina is a citizen of the State of Florida and resides at 2354 NW 2nd Street, Miami, Florida 33125.

76.     Plaintiff Melissa Pumarega is a citizen of the State of Florida and resides at 1043 NW 133rd Court, Miami, Florida 33182.

-10-

77. Plaintiff Nestor Ramos is a citizen of the State of Florida and resides at 5350 W 21st Court, Apartment #206, Hialeah, Florida 33016.

78. Plaintiff Otoniel Ramos is a citizen of the State of Florida and resides at 6362 SW. 138th Path, Miami, Florida 33183.

79. Plaintiff Leonor Rivero is a citizen of the State of Florida and resides at 2252 NW 4th Terrace, Miami, Florida 33125.

80. Plaintiff Maria A. Riveron is a citizen of the State of Florida and resides at 740 NW 17th Avenue, Miami, Florida 33125.

81. Plaintiff Pedro Riveron is a citizen of the State of Florida and resides at 2232 NW 2nd Street, Miami, Florida 33125.

82. **Plaintiff Eduardo Rodriguez** is a citizen of the State of Florida and resides at 2319 NW 2nd **Street, Miami, Florida 33125.**

83. **Plaintiff Manuel Rodriguez is** a citizen of the State of Florida and resides at 2255 NW 2nd Street, Miami, Florida 33125.

84. Plaintiff Maria E. Rodriguez is a citizen of the State of Florida and resides at 380 NW 52nd Avenue, Miami, Florida 33126.

85. Plaintiff Marta Rodriguez is a citizen of the State of Florida and resides at 2255 NW 2nd Street, Miami, Florida 33125.

86. Plaintiff Patricia Rodriguez is a citizen of the State of Florida and resides at 2255 NW 2nd Street, Miami, Florida 33125.

87. Plaintiff Tomas A. Rodriguez is a citizen of the State of Florida and resides at 11154 NW Flagler Lane, Miami, Florida 33172.

-11-

88.    Plaintiff Gloria Sanchez is a citizen of the State of Florida and resides at 367 Tamiami Canal Road, Miami, Florida.

89.    Plaintiff Ileana Santana is a citizen of the State of Florida and resides at 4261 SW 69th Avenue, Florida 33155.

90.    Plaintiff Armanda Santos is a citizen of the State of Florida and resides at 2337 NW 2nd Street, Miami, Florida 33125.

91.    Plaintiff Orlando E. Santos is a citizen of the State of Florida and resides at 2337 NW 2nd Street, Miami, Florida 33125.

92    Plaintiff Diego Tintorero is a citizen of the State of Florida and resides at 17500 NW 52nd Avenue, Miami, Florida 33055.

93.    Plaintiff Carlos Treto is a citizen of the State of Florida and resides at 451 NW 30th Place, Miami, Florida 33125.

94.    Plaintiff Carmen Valdés is a citizen of the State of Florida and resides at 7940 NW 176th Street, Miami, Florida 33015.

95.    Plaintiff Divaldo Valdés is a citizen of the State of Florida and resides at 7940 NW 176th Street, Miami, Florida 33015.

96.    Plaintiff Miriam A. Zaldivar is a citizen of the State of Florida and resides at 1879 SW 16th Street, Miami, Florida 33145.

97    Defendant is the United States of America ("U.S.")

## JURISDICTION AND VENUE

98    The Court has jurisdiction over this action under 28 U.S.C. § 1346(b), as this action involves a federal question

99.     Venue is proper under 28 U.S.C. §1402(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

### FACTS

100.     Plaintiffs have satisfied all conditions precedent to initiating this suit.  Plaintiffs filed timely administrative claims, Form SF-95's, with the U.S. Department of Justice/Immigration and Naturalization Service ("DOJ/INS") on or before April 21, 2002.  DOJ/INS failed to respond and/or make a final disposition of Plaintiffs' administrative claims within the six (6) month time period required by 28 U.S.C. § 2675.  DOJ/INS's failure to respond and/or make a timely final disposition of Plaintiffs' administrative claims constitutes a final denial of these claims pursuant to 28 U.S.C. § 2675.

101.     On November 25, 1999, Elian Gonzalez, a six-year old boy from Cuba, was found adrift in the sea off the coast of Fort Lauderdale, Florida.  Three days earlier, Elian, his mother, step-father and eight other persons had fled Cuba's communist regime in a small boat, seeking freedom and the promise of a better life in the United States.  The boat capsized, and Elian's mother, step-father and six other passengers drowned.  Elian was pulled from the sea as he clung to an innertube.  The U.S. Coast Guard then took him to shore.

102.     After Elian was treated for dehydration and sun exposure at Hollywood Memorial Hospital, the INS paroled him into the United States, without inspection, and released him into the custody of his great-uncle, Lazaro Gonzalez, a resident of Miami, Florida.

103.     Lazaro Gonzalez subsequently filed a petition with the INS seeking political asylum for Elian.  Elian also filed his own asylum petition.

104. On January 5, 2000, INS Commissioner Doris Meissner ("Meissner") determined that Elian's request for political asylum would not be considered, claiming that Elian's natural father, acting through the Cuban Foreign Ministry, purportedly sought the boy's return to Cuba.

105. On January 7, 2000, Lazaro Gonzalez filed a petition in the Circuit of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("Miami-Dade Circuit Court") seeking temporary custody of Elian.

106. On January 10, 2000, the Miami-Dade County Circuit Court entered a Temporary Protective Order granting Lazaro Gonzalez temporary custody pending service of process on Elian's natural father and a full hearing.

107. On January 12, 2000, Attorney General Janet Reno ("Reno") upheld Meissner's decision refusing to consider Elian's petition for asylum.

108. Elian proceeded to challenge the refusal to consider his asylum petition by filing a civil action in the U.S. District Court for the Southern District of Florida, *Gonzalez v. Reno, et al.*, Case No. 00-0206-CIV-MOORE. When the District Court upheld this refusal to even consider Elian's asylum petition, Elian took an immediate appeal to the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit").

109. During the pendency of the appeal, Reno, Meissner and various other persons cooperating with the Cuban communist government, including Gregory Craig, one of President William Jefferson Clinton's personal lawyers, arranged for Elian's natural father to travel to the United States to take custody of Elian and to thwart the boy's attempts to obtain political asylum in the United States.

110.   Upon his arrival in the United States on or about April 6, 2000, Elian's natural father took up residence at a location in Bethesda, Maryland occupied and controlled by the Cuban Interests Section, the representative of Cuba's communist government in the United States. At all relevant times, Elian's natural father remained under the control of the Cuban Interests Section, which is cloaked with diplomatic immunity.

111.   On April 12, 2000, six days after the arrival of Elian's natural father in the United States, the INS directed Lazaro Gonzalez to take the boy to Opa Locka Airport in Miami-Dade County, Florida the following day. The INS sought to transfer custody of Elian to his natural father.

112.   In a letter to Lazaro Gonzalez that same day, the INS admitted that it was ordering successive **transfers of custody only, not revoking** Elian's parole into the United States:

> **The goal of the Department of Justice** and the Immigration and Naturalization **Service is to ensure that Elian's transition** to his father's care is as peaceful as possible. **We must do everything in** our power to see that the transfer is accomplished in a thoughtful, constructive manner . . . These successive transfers of parole and care are being ordered pursuant to 8 C.F.R. §§ 212.5, 235.2, 236.3 (199) . . . I hereby instruct you to present Elian at the same time and place, i.e., the Main Coast Guard Gate at Opa-Locka Airport, at 2 p.m. on Thursday, April 13. At that time, the parole of Elian into your care will be revoked, and care of Elian will be temporarily transferred to [INS Official Rosa R. Urquiola], who will bring Elian to Washington, D.C. Once Elian has arrived in Washington, D.C., he will be paroled into the care of his father.

113.   On April 13, 2000, the **Miami-Dade County Circuit Court** dismissed Lazaro Gonzalez' petition, vacating the temporary custody of Elian previously granted by that Court.

114.   In an April 14, 2000 letter to Lazaro Gonzalez, the INS again admitted that Elian's parole into the United States was not being revoked, but that the INS merely sought to transfer temporary custody of Elian. "Moreover, you are holding Elian without the consent of his father

-15-

and without the consent of the Immigration and Naturalization Service, Elian's current legal

custodian under the immigration laws."

115.    At no point was Elian's presence in the United States contrary to U.S. immigration

laws. The INS only sought to transfer temporary custody of Elian while he remained in the

United States.

116.    Moreover, at no point did the INS or Reno, Meissner and/or Deputy Attorney

General Eric Holder ("Holder") secure a judicial order compelling Lazaro Gonzalez to turn Elian

over to the INS and/or his natural father.

117    On Wednesday, April 19, 2000, the Eleventh Circuit entered an injunction pending

disposition of Elian's appeal. The Eleventh Circuit injunction explicitly stated:

> (1)    **Plaintiff, Elian Gonzalez, is** ENJOINED from departing or attempting to
> **depart from the United States;**
>
> (2)    Any and all persons acting for, on behalf of, or in concert with Plaintiff,
> Elian Gonzalez, are ENJOINED from aiding or assisting, or attempting to aid or
> assist, in the removal of Plaintiff from the United States;
>
> (3)    All officers, agents, and employees of the United States, including but not
> limited to officers, agents, and employees of the United States Department of
> Justice, are ENJOINED to take such reasonable and lawful measures as necessary
> to prevent the removal of Plaintiff, Elian Gonzalez, from the United States

*See Gonzalez v. Reno*, No. 00-11424-D, slip op. at 15-16 (11th Cir. April 19, 2000)   Reno,

Meissner and Holder undoubtedly were aware of and knowledgeable about the Eleventh Circuit's

injunction, or should have been aware of and knowledgeable about the Eleventh Circuit's

injunction

118    The following day, Lazaro Gonzalez, acting through attorneys Kendall Coffey,

Manny Diaz and Jose Garcia-Pedrosa, and with the assistance of several mediators, including

-16-

Aaron Podhurst, a well-respected Miami lawyer and longtime friend of Reno, and Edward T. Foote, II, President of the University of Miami, among others, began engaging in what they believed were good faith negotiations with Reno, Meissner and Holder to try to reach a mutually agreeable, peaceful transfer of temporary custody of Elian. By the end of the afternoon, the parties had prepared a list of six points to serve as the outline for an agreement. The mediators also briefed several leaders of the Cuban-American community in Miami about the potential agreement.

119. Despite their willingness to engage in what the Gonzalez family believed were good faith negotiations, the INS secretly issued an arrest warrant for Elian on Friday, April 21, 2000. The arrest warrant falsely claimed that Elian "is within the country in violation of the immigration laws and is therefore liable to be taken into custody as authorized by section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226]." Again, however, at no point was Elian in the United States contrary to U.S. immigration laws. His parole into the United States had never been revoked, and the Eleventh Circuit had explicitly enjoined him from leaving the United States.

120. In addition, 8 U.S.C. § 1226, the purported authority by which the INS issued the arrest warrant, only allows the INS to issue arrest warrants for the purpose of placing aliens in removal proceedings. The statute states, in pertinent part: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226. The immigration laws do not authorize the arrest of a minor for the purpose of transferring custody, temporary or otherwise, and, again, the Eleventh Circuit had explicitly enjoined the removal of Elian from the United States. Thus,

-17-

not only was the arrest warrant contrary to law, but its issuance was in direct contravention of the Eleventh Circuit's injunction.

121.    Moreover, according to Richard Sharpstein, one of Miami's best regarded criminal-defense and immigration lawyers, the INS never arrests Cuban aliens without evidence that they have committed a crime.  This restraint on the part of the INS is consistent with the Cuban Adjustment Act of 1966, which makes Cuban nationals eligible for U.S. citizenship once they have been in the United States for one year.

122.    On information and belief, Reno, Meissner and Holder were familiar with, and knowledgeable about, immigration laws and the practice of issuing INS administrative arrest warrants, as well as the Eleventh Circuit's injunction, and thus knew or should have known that the arrest warrant was false and invalid.

**123.    On information and belief, Re**no, Meissner and Holder directed that the arrest warrant be issued, or were knowledgeable about and agreed to and/or acquiesced in its issuance to provide a false legal pretext for a paramilitary raid on the Gonzalez family's home and neighborhood, which they were jointly planning.

124.    Also on April 21, 2000, and again despite engaging in on-going negotiations, through mediators Podhurst and Foote, with the Gonzalez family, the INS applied for a search warrant to enter the Gonzalez family's home and search for Elian pursuant to Rule 41(b)(4) of the Federal Rules of Criminal Procedure, a provision designed to assist federal law enforcement agents in retrieving kidnaping victims.  The INS also sought and obtained a motion to seal its application.

125. The INS' application for a search warrant and supporting affidavit falsely claimed that Elian was being unlawfully restrained and was the subject of an INS administrative arrest warrant, among other demonstrably false statements.

126. Not only was the arrest warrant for Elian demonstrably false and invalid, but at no time was Elian ever "unlawfully restrained" by the Gonzalez family in Miami. Only days earlier, Reno herself admitted that, since Elian's arrival in the United States, Lazaro Gonzalez and his family "have acted as loving caregivers." Elian attended school, visited Disney World, went to the circus, played outside, and engaged in all the normal activities of a six year old. Elian met with his Cuban grandmothers in Miami Beach, Florida, and was receiving psychological care to help him cope with the tragic death of his mother. Elian himself had publicly stated that he wished to remain in the United States with the Gonzalez family and not return to Cuba with his natural father. He was not the victim of kidnaping, nor was he "concealed" in any way.

127. Moreover, in granting the injunction on April 19, 2000, the Eleventh Circuit had found that "Lazaro [Gonzalez's] interests, to say the least, are not obviously hostile to [Elian's] interests" and expressly declined to order Lazaro Gonzalez to present Elian to the INS for transfer of care to his natural father. *See Gonzalez v. Reno*, No. 00-11424-D, slip op. at 14 & 15 n. 16 (11th Cir. April 19, 2000)

128. The application and supporting affidavit also falsely claimed that the INS had revoked Elian's parole and that his remaining in the United States was a violation of the law. Again, the INS had not revoked Elian's parole, but only sought to transfer temporary custody of Elian, and the Eleventh Circuit had explicitly ordered Elian to remain in the United States

129.    Conspicuously absent from the application and supporting affidavit was a copy of the Eleventh Circuit's April 19, 2000 order and injunction, although numerous other attachments and exhibits had been included.

130.    The INS did admit in the affidavit, however, that it maintained daily surveillance of Lazaro Gonzalez' home.  The affidavit made no reference to any weapons being in the home.  It made no reference to any allegations of mistreatment or harm to Elian by the Gonzalez family.

131.    The affidavit also made no reference to the fact that Podhurst, Foote and others were feverishly mediating negotiations with Reno, the Gonzalez family and their attorneys, even as the application and affidavit were being filed.

132.    The INS did not present its application for a search warrant and supporting affidavit to the Hon. K. Michael Moore, the federal district judge who had presided over Elian's civil lawsuit challenging the INS' refusal to even consider his asylum petition.  Rather, the INS waited until 7:00 p.m. on Good Friday, April 21, 2000, when a federal duty magistrate, a Clinton-appointee not familiar with the case and notoriously "pro-government" in his rulings, was available to hear warrant applications.  The magistrate issued the search warrant at 7:20 p.m. that same day.

133.    On information and belief, Reno, Meissner and Holder knew that the application for a search warrant and supporting affidavit contained false misrepresentations and omissions.

134.    On information and belief, Reno, Meissner and Holder directed that the false application for a search warrant and supporting affidavit be submitted to the magistrate, or were knowledgeable about and agreed to and/or acquiesced in the submission of these false and misleading documents to the magistrate, in order to obtain a search warrant and thereby have a

-20-

false legal pretext for a paramilitary raid on the Gonzalez family home and neighborhood, which they were jointly planning.

135.   On information and belief, neither the mediators, the Gonzalez family, nor their attorneys were aware that Reno, Meissner and Holder had taken steps to obtain a search warrant and an arrest warrant for Elian, or had planned a paramilitary raid on the Gonzalez family home and neighborhood. Rather, the mediators, Lazaro Gonzalez and his family, and their attorneys continued to believe that Reno, Meissner and Holder were negotiating with them in good faith.

136.   By late afternoon on Good Friday, April 21, 2000, the group reportedly felt they had developed a workable agreement by which Elian, the Gonzalez family, Elian's natural father, and his family would take up temporary residence at a mutually-agreed upon, neutral site in Miami-Dade County until the resolution of all pending legal proceedings. Reno instructed the Gonzalez family to put the proposal in writing and fax it to her office by 5:00 p.m. They did so at 4:52 p.m. Foote was so confident that a compromise was in the works that he went home to be with his family.

137.   Podhurst reportedly called the Gonzalez family's home at 8:00 p.m to say that Reno, Meissner and Holder were considering the offer, but wanted Elian to stay with his natural father throughout the reunion. Lazaro Gonzalez and his family wanted Elian to stay with Lazaro Gonzalez' daughter, Marisleysis Gonzalez.

138.   By 9:00 p.m., Reno's office reportedly had sent the proposal to Elian's natural father and his attorney, Gregory Craig. Lazaro Gonzalez reportedly agreed to let Elian decide who he would stay with during the reunion.

-21-

139.    Reno reportedly was giving hourly updates to White House Chief of Staff John Podesta on the status of the negotiations. Podesta relayed one optimistic update to President Clinton at 8:30 p.m.

140.    But at 2:00 a.m., Podhurst called the Gonzalez family and their attorneys to say that Reno was insisting that the reunion take place in a privately run retreat in Washington's Virginia suburbs.

141.    According to White House Spokesman Joe Lockhart, Podesta updated President Clinton again at 2:15 a.m., relaying word that Reno still felt the negotiations held promise.

142    Reno was negotiating from a small, private office at the U.S. Department of Justice's headquarters in Washington, D.C., surrounded by about a dozen people, including Meissner and Holder.

143.    **The Gonzalez family reportedly** felt the reunion site was not as important as their request **to speak to Elian's natural father alone.** The mediators reportedly believed that an accord had been reached.

144    At approximately 4:00 a.m., however, Reno reportedly told the Gonzalez family's lawyers, who were negotiating with the family from inside the Gonzalez family's home, that time was running out  The family reportedly asked for a little more time to think through Reno's latest proposal

145    Before ordering the raid to seize Elian at gunpoint, Reno reportedly polled the officials negotiating with her at the Justice Department, including Meissner and Holder about whether to proceed with the raid  Reno reportedly pointed to each one in turn and asked for their thoughts  Everyone, including Meissner and Holder, reportedly agreed to commence the raid

-22-

According to Holder, Reno then gave the order to commence the raid and seize Elian by force. Meissner reportedly walked into the next room and telephoned her chief of staff, Mike Betraft, who was waiting at the INS command center a half-mile away, to convey the order commencing the raid.

146. Shortly before 5:00 a.m., Reno reportedly telephoned Podesta to inform The White House of the decision to commence the raid.

147. At approximately 5:05 a.m., two of the lawyers for Lazaro Gonzalez's family, Kendall Coffey and Manny Diaz, as well as Marisleysis Gonzalez, called Podhurst on a speaker phone in the Gonzalez family's dining room. They asked Podhurst if he had any news from Reno. Podhurst put Marisleysis Gonzalez and the family's lawyers on hold and reportedly called Reno.

148. At approximately 5:15 a.m, as the Gonzalez family and their lawyers were on hold with Podhurst, who in turn was speaking with Reno, a convoy of vehicles containing federal agents dressed in combat gear and armed with semiautomatic weapons drove up to the home. Other INS agents approached the house from the rear.

149. Reno had ordered the raid, and Meissner and Holder knew of, agreed to, approved of and/or acquiesced in the raid, despite knowing that: (1) at no point had they or the INS secured a judicial order compelling Lazaro Gonzalez to turn Elian over to the INS and/or his natural father, (2) Elian was not being "unlawfully restrained" in any manner, was not the victim of a kidnaping, and was not being "concealed" or "illegally harbored" in the Gonzalez' family home, (3) the administrative arrest warrant for Elian was false and invalid, (4) the search warrant for Elian was false, invalid and fraudulently obtained, and (5) they were close to achieving a peaceful, negotiated settlement with the Gonzalez family in any event.

-23-

150.    Reno also ordered the raid, and Meissner and Holder also knew of, agreed to, approved of and/or acquiesced in the raid, despite knowing and intending that: (1) a strike force of 151 heavily-armed federal law enforcement agents ("Federal Agents"), consisting of 131 INS agents and 20 U.S. Marshals, would be unleashed on the Gonzalez family's home and neighborhood; (2) peacefully assembled supporters would be sprayed with gas for having assembled and expressed their support for Elian and the Gonzalez family, and to prevent them from continuing to do so; and (3) neighbors, supporters and passers-by would be gassed, restrained, beaten, threatened and put in immediate fear for their lives and liberty.

151    Indeed, the raid had been carefully-planned and rehearsed for nearly two weeks. According to Grover Joseph Reese, a former general counsel of the INS from 1991 to 1993:

> The raid employed counterterrorist tactics usually used in hostage situations. These included the predawn hours, the use of obscenities and of violence against inanimate objects to intimidate and disorient the actual targets, and the fabrication of an imminent breakthrough in negotiations just before the extraction team moved in.

*See* Grover Joseph Reese, "Rule of Reno," *The Wall Street Journal*, April 25, 2000.

152    Several months before the raid, officials had erected a barricade across N.W. 2nd Street, west of the Gonzalez family's home. At various points in time, hundreds, if not thousands of persons, including many of Plaintiffs, had assembled peacefully behind the barricade and in nearby yards to pray and demonstrate their support for Elian and the Gonzalez family, as well as to express their belief that Elian should remain in the United States. A tent had even been raised on the street behind the barricade to provide temporary shelter for the supporters. Media crews had set up encampments directly across from the Gonzalez family home and along N.W. 2nd Street.

-24-

153.    At the time of the raid, approximately fifty (50) supporters, including many of Plaintiffs, had assembled peacefully behind the barricade, in nearby yards, and elsewhere in the neighborhood, including in front of the house at 2322 SW 3rd Street, directly behind the Gonzalez family's home, to demonstrate support for Elian and the Gonzalez family. Some supporters were talking, others were praying. Approximately eight women sitting on lawn chairs, representatives of an organization known as "Mothers Against Repression," were praying the Rosary in the Gonzalez family's front yard.

154    When the convoy of vehicles pulled up to the Gonzalez family's home, federal agents immediately began indiscriminately spraying one or more unidentified chemical agents, including, on information and belief, prohibited 0-chlorobenzalmalononitrile, which also is known as tear gas or "CS" gas, to immobilize, restrain and suppress persons who had assembled peacefully behind the barricade, as well as neighbors, passers-by, and even members of the news media assembled along N.W. 2nd Street. Federal agents sprayed the chemical agent(s), including, on information and belief, tear gas or CS gas, directly behind the barricade and throughout the neighborhood, including, on information at many of Plaintiffs.

155.    Federal agents also sprayed chemical agents at the rear of the Gonzalez family's home, and continued to spray these chemical agents, including, on information and belief, tear gas or CS gas, throughout the raid. Chemical agents wafted into the Gonzalez family's home and were used inside the home itself.

156    The heavily-armed federal also agents shouted obscenities, pointed guns and/or threatened to shoot, beat, kicked and punched neighborhood residents, passers-by and persons who had assembled peacefully outside the home.

-25-

157.    The federal agents' conduct during the raid violated several well-established INS regulations, guidelines, policies, and procedures.  Specifically, INS's *Enforcement Standard: Use of Nondeadly Force* at IV(C)(1) and (D) authorizes the limited use of oleoresin capsicum ("OC") spray only and expressly prohibits the use of any other types of chemical agents, including but not limited to 0-chlorobenzalmalononitrile, also known as tear gas or "CS" gas.  On information and belief, the federal agents dispensed both OC spray and CS gas during the raid, and, in particular, used a weapon known as an "Israeli Gas Gun" and/or other chemical deployment devices to douse persons assembled peacefully behind the barricade with CS gas and to dispense CS gas throughout the neighborhood generally.  The federal agents' use of CS gas during the raid also violated the Appendix to the Operational Plan adopted by the INS for the raid, which authorized the use of OC spray only.

158.    The federal agents' conduct during the raid also violated the Appendix to the Operational Plan adopted by the INS for the raid insofar as the Appendix authorized the deployment of a cloud of OC spray only in the event of a "mass breech" of the "Demonstrator Barricade" and upon the command of the Perimeter Security Team Leader.  No such mass breech occurred, but federal agents nonetheless deployed a cloud of an unidentified chemical agent, which, on information and belief, was CS gas, not OC spray, to immobilize, restrain and suppress persons, including Plaintiffs, who had assembled peacefully behind the barricade, as well as neighbors, passers-by, and even members of the news media assembled along N W 2nd Street

159    The federal agents' conduct during the raid also violated the Appendix to the Operational Plan adopted by the INS for the raid insofar as the Appendix authorized the use of force against individuals only in the following locations and under the following circumstances

-26-

(i) persons inside the Gonzalez family's yard were to be placed "in a prone position and flex-cuffed behind the back. Any elder civilians will simply be proned out (sic) on the ground and commanded not to move. All 'failure' to obey commands will be met with 'minimum force' standards necessary to insure compliance. ALL civilians encountered within the 'inner-perimeter' will be proned out (sic) and secured"; (ii) persons within the "outer-perimeter" who fail to obey commands "will be secured by being placed in a prone position and handcuffed behind the back"; (iii) persons who breech the "Demonstrator barricade" "will be challenged" with "minimum force necessary to neutralize the threat to the security/safety of personnel assigned to [the] mission. Violators will be proned (sic) and hand-cuffed in the street"; and (iv) persons who breech the "News barricades" "will be challenged" with "minimum force necessary to neutralize the threat to the security of [the] mission . . . Individual challenges will be made by vehicle security officers who will use minimum force necessary to neutralize the threat to the security of [the] mission." Nonetheless, and regardless of location or circumstance, federal agents beat, kicked, punched, pushed, pointed weapons at, threatened to shoot, shouted obscenities at, and used unidentified chemical agent(s) against persons, including Plaintiffs, in the Gonzalez family's yard, in the street, behind the barricade, and throughout the neighborhood generally.

160.   The federal agents' conduct during the raid also violated the INS' *Enforcement Standard: Use of Nondeadly Force* at IV (B) (signed on September 21, 1998 by INS Commissioner Doris Meissner and effective at the time of the raid), which requires that an immigration officer "shall always use the minimum nondeadly force necessary to accomplish the officer's mission and shall escalate to a higher level of nondeadly force only when such level is

warranted by the situation, including the actions, apparent intentions and capabilities of the suspect, the prisoner, or the assailant."

161.   In addition, the federal agents' conduct during the raid also violated the following applicable regulations, guidelines, policies, and procedures, among others, regarding the use of force:  (i) 8 C.F.R. 287.8 (a)(iii) ("A designated immigration officer shall always use the minimum non-deadly force necessary to accomplish the officer's mission and shall escalate to a higher level of non-deadly force only when such higher level of force is warranted by the actions, apparent intentions, and apparent capabilities of the suspect, prisoner, or assailant."); (ii) INS' *Investigator's Handbook* at 5-2 5 ("The use of force in dealing with individuals with whom investigators have contact is permissible only to the degree that is necessary to protect oneself or a third party, to effect an arrest, or to prevent the escape of someone in custody."); (iii) INS' *Border Patrol Handbook* at Chapter 5-8 ("Patrol agents may use force only to the degree necessary to protect themselves or third parties, to effect arrests, or to prevent the escape of persons in custody."), (iv) INS' *Border Patrol Handbook* at Chapter 17-5 ("Patrol agents may use force only to the degree necessary to protect themselves or third parties, to effect arrests, or to prevent the escape of persons in custody."), (v)  INS' *Border Patrol Handbook* at Chapter 24-13 ("Employment of these devices [Service-owned tearing devices] is authorized for defensive purposes only when need is clearly demonstrated and use of a firearm is not immediately necessary."), (vi) INS' *The Law of Arrest, Search & Seizure Manual (M-69)* at Chapter 3, Section (B)(2)(b) ("INS policy permits the use of non-deadly physical force only in self-defense, in defense of a fellow officer or third party, or when it is necessary to make an arrest or prevent an escape."), and (vii) INS' *Officers' Handbook, (M-68): A Guide for Proper Conduct and*

-28-

*Relationships with Aliens and the General Public* at Part II "Use of Physical Force and 'Third Degree Methods'" ("The use of physical force or violence in handling detained aliens or other persons with whom official business is being conducted is permissible only in self-defense, in defense of another person, or to such an extent as is absolutely necessary in making an arrest or preventing an escape.").

162.    The federal agents' conduct during the raid also violated the INS's *Border Patrol Handbook* at Chapter 24-13 ("Aerosol tearing devices should never be fired at a subject's face from a distance of less than two feet "), when they sprayed persons, including Plaintiffs, directly in the face at point blank range with unidentified chemical agents.

163.    The federal agents' conduct during the raid also violated INS' *Firearms Policy: Administrative Manual Section 20.012* at Subsection 38 "Firearms Safety" (adopted on August 8, 1996 by INS Commissioner Doris Meissner and effective at the time of the raid) ("Except for training exercises under strictly controlled conditions involving unloaded firearms, Service officers shall not point a weapon, loaded or unloaded, at anyone or anything, unless intending to discharge the weapon ") when they recklessly pointed guns at persons, including Plaintiffs, and/or threatened to shoot them.

164.    The federal agents' conduct during the raid also violated the following applicable regulations, guidelines, policies, and procedures, among others  (i) INS' *Officers' Handbook, (M-68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Relationship with the Public" ("Every Member of the public is entitled, as an absolute right, to courteous, fair, impartial, and sympathetic treatment from every employee of the service "), (ii) INS' *Officers' Handbook, (M-68): A Guide for Proper Conduct and Relationships*

-29-

*with Aliens and the General Public* at Part II "Poise and Dignity in Performance of Official Duties" ("The importance of poise, dignity, sympathy, honest simplicity, and self control even under the most severe provocation cannot be overemphasized.") ("The importance of poise, dignity, sympathy, honest simplicity, and self control even under the most severe provocation cannot be overemphasized. . . . He should never use profanity or vulgarity."); (iii) INS' *Officers' Handbook, (M-68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Courtesy" ("The Service takes the realistic view that courtesy is necessary in our activities and its almost as much a job requirement as any other. It is your duty to be considerate and polite to the public at all times."); and (iv) INS' *Officers' Handbook, (M-68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Be Patient" ("It is often difficult to be patient and to exercise self restraint in the face of verbal criticism or threatened physical violence, but such restraint and patience usually will enlist the support of witnesses and pay dividends in increased respect for the individual and the Service. Officers of this Service have the difficult problem of dealing with persons of a wide range of intelligence, mood, temperament and cultural backgrounds. No matter how exasperating the circumstances become, you must bear in mind that you are a representative of our Government and you must conduct yourself in a worthy manner.")

165    Lastly, the federal agents' conduct during the raid also violated the Appendix to the Operational Plan adopted by the INS for the raid ("Miami Police Department will be responsible for coordinating OC decontamination or first aid") and other INS policies such as the INS' *Border Patrol Handbook* at Chapter 24-13 ("Any person sprayed with Mace must be examined as soon as possible by a physician if (1) their eyes have been sprayed, (2) there is an

indication of possible injury, or (3) any injury is claimed"), when they failed to properly

coordinate medical attention for persons, including Plaintiffs, who were injured during the raid.

Miami Police Department personnel on the scene were not advised that chemical agents were to

be used, and as a result, were not prepared to treat chemical agent-related injuries. Moreover,

upon information and belief, Defendant, by and through its agents, servants and employees,

requested that local emergency response personnel not respond to any calls for emergency

services on or around the time of the raid.

166.    Gonzalez family spokesman Armando Gutierrez had been in back of the house

when he heard the federal agents approaching. Gutierrez ran to the front of the house to allow

Associated Press photographer Alan Diaz to enter through the front door.

167.    **After Diaz had entered family**'s home, federal agents approached the house with a

battering **ram and broke down the front door** of the Gonzalez family's home. Eight federal agents

**were suddenly inside**.

168.    Plaintiff Dalrymple, who had rescued Elian from the sea on Thanksgiving Day and

had spent much time at the Gonzalez family's home, had been sleeping on a couch in the front

foyer when the raid began. Not knowing what was happening, Plaintiff Dalrymple ran into the

living room and scooped Elian off the couch.

169.    "I was on the sofa dead asleep. What I heard sounded like foot soldiers," Plaintiff

Dalrymple recalled. "I jumped up. I got him into my arms. He was screaming 'Help me Help

me, Que Pasa, Que Pasa?"

-31-

170.    Plaintiff Dalrymple carried Elian into the rear bedroom shared by Lazaro Gonzalez and his wife, Angela Gonzalez. Photographer Diaz, Elian's 5-year-old cousin Lazaro Martell and his mother also ran into the room. Someone closed the bedroom door.

171.    In the living room, one federal agent pointed a machine gun at Marisleysis Gonzalez's chest. Another federal agent aimed his gun at Lazaro Gonzalez's head. Other agents aimed guns at attorneys Kendall Coffey and Manny Diaz, who stood frozen in the dining room.

172.    "Don't do this!" Marisleysis reportedly screamed, her arms outstretched. "Don't let him see this! I'll give you the boy! **Please** put the guns down! I'll get the boy up!" "We had no warning that the marshals were coming. We were on the phone negotiating. They took him screaming and crying," Marisleysis later complained.

173.    **Agents searched the house for** Elian, flipping over tables, breaking more doors and religious **artifacts. Elian was not in his room.** "Give me the fucking boy or I'll shoot," Marisleysis quoted **one agent as saying.**

174.    In the rear bedroom, Plaintiff Dalrymple held Elian in his arms as he stood before an open closet door. The closet was packed with boxes and clothes, and there was no space to hide. Federal agents kicked the door open, splitting it in half. The top half swung on its hinges while the bottom half fell to the floor.

175    "I took his head and buried it into my shoulder . . . There was nowhere to go," Plaintiff Dalrymple later recalled.

176    "Give me the boy," yelled one federal agent, pointing a 9mm Heckler & Koch submachine gun at Plaintiff Dalrymple as he hugged Elian to his chest.

177.    Associated Press photographer Alan Diaz also was present in the bedroom and recorded the event on film.  His photograph of the federal agent holding Plaintiff Dalrymple and Elian at gunpoint, attached hereto and incorporated herein by reference, was quickly broadcast around the world.

178.    INS Agent Betty A. Mills, reportedly packing a holstered pistol, entered the room with a blanket and grabbed Elian.

179.    The federal agents backed out of the room with Elian -- their guns still trained on everyone, including 5 year-old Lazaro Martell.

180    Elian screamed for Marisleysis. "Prima Mari! Prima Mari!," Elian yelled  "Cousin Mari! Cousin Mari!"

181.    Federal agents exited the house; Mills carried Elian out to a waiting van.

182.    Tony Zumbado, an NBC cameraman inside the Gonzalez family home, later stated that federal agents knocked him to the floor and kicked him in the lower back during the raid.  He stated that his camera was slammed down on his stomach and that he was held at gunpoint on the floor, which prevented from filming Elian's seizure.  "The agents were physically and verbally abusive, they said every bad word in the book and kept me from doing my job," Zumbado has stated  "I was left winded and in pain."

183    Meanwhile, outside the Gonzalez family's home, Plaintiff Hector Abelairas had been among the supporters assembled peacefully behind the barricade when federal agents doused him and other supporters with chemical agents, including, on information and belief, tear gas or CS gas  When the raid began, Plaintiff was on the south side of the street of the Gonzalez family's home, behind the barricade  Plaintiff heard screaming and turned to see vans moving towards the

Gonzalez's home, he was then gassed directly in the face. Plaintiff fell to the floor disoriented and was rendered unconscious, he awoke vomiting.

184.    Plaintiff Miguel Alejandro also was among the supporters assembled peacefully behind the barricade when federal agents doused him and other supporters with an chemical agents, including, on information and belief, tear gas or CS gas. When the raid began Plaintiff was in the front yard of the Gonzalez family house praying. Plaintiff was gassed by the federal agents and thrown on the ground. The federal agents used vulgar language, threats and placed a foot on Plaintiff's back, while he was on the ground.

185.    Plaintiff Gregory Paul Allen also was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. Plaintiff tried to move closer to the Gonzalez family's home, but federal agents shouted at him, threatened him with a battering ram, and threatened to spray him with more gas. Federal agents also seized Plaintiff, grabbing and pulling on him, and nearly forcing him to the ground.

186.    Plaintiff Abel Ramon Alonso was asleep in his home with his wife, Tanay Alonso, and his two minor children, Natalie Alonso and Nicole Alonso. Plaintiff's home is across from and to the left of the Gonzalez family's home at 23rd Avenue and 2nd Street. When the raid began, Plaintiff and his family were awoken by the noise of the raid. Plaintiff and his family proceeded out of their home to see what was happening. Plaintiff and his family were overwhelmed by a cloud of chemical agents, including, on information and belief, tear gas or CS gas, and retreated into their

house. Plaintiff's house was consumed by gas and Plaintiff and his family were forced to leave their home and stay at a hotel.

187.   Plaintiff Natalie Alonso, a minor, was asleep in her home with her parents, Abel Ramon Alonso and Tanay Alonso, and her sister, Nicole Alonso. Plaintiff's home is across from and to the left of the Gonzalez family's home at 23rd Avenue and 2nd Street. When the raid began, Plaintiff and her family were awoken by the noise of the raid. Plaintiff and her family proceeded out of their home to see what was happening. Plaintiff and her family were overwhelmed by a cloud of chemical agents, including, on information and belief, tear gas or CS gas, and retreated into their house. Plaintiff's house was consumed by gas and Plaintiff and her family were forced to leave their home and stay at a hotel.

188.   Plaintiff Nicole Alonso, a minor, was asleep in her home with her parents, Abel Ramon Alonso and Tanay Alonso, and her sister, Natalie Alonso. Plaintiff's home is across from and to the left of the Gonzalez family home at 23rd Avenue and 2nd Street. When the raid began, Plaintiff and her family were awoken by the noise of the raid. Plaintiff and her family proceeded out of their home to see what was happening. Plaintiff and her family were overwhelmed by a cloud of chemical agents, including, on information and belief, tear gas or CS gas, and retreated into their house. Plaintiff's house was consumed by gas and Plaintiff and her family were forced to leave their home and stay at a hotel.

189   Plaintiff Tanay Alonso was asleep in her home with her husband, Abel Ramon Alonso, and her two minor children, Natalie Alonso and Nicole Alonso. Plaintiff's home is across from and to the left of the Gonzalez family home at 23rd Avenue and 2nd Street. When the raid began, Plaintiff and her family were awoken by the noise of the raid. Plaintiff and her family

proceeded out of their home to see what was happening. Plaintiff and her family were overwhelmed by a cloud of chemical agents, including, on information and belief, tear gas or CS gas, and retreated into their house. Plaintiff's house was consumed by gas and Plaintiff and her family were forced to leave their home and stay at a hotel.

190.    Plaintiff Leslie Alvarez also was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was on the front patio of a house neighboring the Gonzalez family home, behind the barricade. Plaintiff tried to move closer to the Gonzalez family home, but was again sprayed with gas by federal agents.

191.    Plaintiff Elsa Anderson also was among the supporters assembled peacefully behind the barricade when federal agents doused her and other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was standing in the middle of the street, behind the barricade. A federal agents sprayed Plaintiff directly in the face with gas.

192.    Plaintiff Guillermo Arce also was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. Plaintiff tried to move closer to the Gonzalez family home, but federal agents shouted and cursed at him, struck him in the stomach with a rifle butt, knocked him to the ground, and threatened to spray him with more gas. While Plaintiff lay on the ground, a federal agent held him at gun point as the raiding party withdrew to their vehicles.

-36-

193.   Plaintiff Joel Beltran was among the supporters assembled peacefully behind the barricade, on the front patio of a house neighboring the Gonzalez family home.  When Plaintiff saw a convoy of vehicles approaching the Gonzalez family home, he entered the Gonzalez family's front yard.  Plaintiff witnessed numerous federal agents clad in paramilitary gear exit the vehicles, then begin to indiscriminately spray chemical agents, including, on information and belief, tear gas or CS gas, around the Gonzalez family home and directly at the peacefully assembled supporters behind the barricade.  Plaintiff shouted, "Where's your warrant?"  A federal agent shouted back, "We don't need a fucking warrant!"  As he stood peacefully at the front steps of the Gonzalez family's home, federal agents hit Plaintiff twice in the chest with a battering ram and screamed at him twice, "Get the fuck out of the way!"  Federal agents also struck Plaintiff in the back of the head.  **One federal agent then grabbed and** twisted Plaintiff's left hand, then threw him towards a fence in **the Gonzalez family's yard.  Plaintiff** struck his head as he landed against the fence.  A federal agent then approached Plaintiff, pointed a machine gun at him and screamed, "If you move, I'll shoot you!"  Although Plaintiff clearly had been immobilized by the effects of the gas and the federal agent brandishing a machine gun at him, a second federal agent approached Plaintiff and sprayed gas directly into his face at point blank range

194.   Plaintiff Teresa Benitez was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the front yard of the Gonzalez family home, behind the barricade.  Plaintiff tried to move closer to the Gonzalez family home when she was shoved on top of another supporter, onto the ground, by a federal agent.  The federal agent then struck her with a machine gun in the ribs to keep her down

-37-

on the ground and yelled, "Don't move or I'll shoot".   The federal agent kept Plaintiff pinned to the ground until the raid was completed.

195.   Plaintiff Concepcion Maria Cabral also was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the front yard of a house neighboring the Gonzalez family home, behind the barricade.  Plaintiff tried to move closer to the barricade, but was sprayed directly in the face with gas by a federal agent.

196.   Plaintiff Nancy Canizares, who is disabled, had assembled peacefully with at least two other persons in front of the house located at 2322 SW 3rd Street by the Gonzalez family home.  When the raid began, Plaintiff was sitting peacefully in a lawn chair on the sidewalk. Plaintiff heard speeding vehicles, then saw two (2) vans  stop directly in front of where she sat Federal agents exited the vans screaming, "Don't move, or we'll shoot!"  One federal agent shoved Plaintiff against a fence, then threw her to the ground.  Another federal agent held Plaintiff at the point of a machine gun as she lay on the ground.  Because of her disability, Plaintiff suffered excruciating pain as she was forced to lay on the ground.  Plaintiff tried to explain to the federal agent holding her at gunpoint that she was disabled and was in excruciating pain, but Plaintiff's complaints went unheeded.  A female federal agent at the wheel of one of the vans shouted at Plaintiff, "Shut-up or I'll shoot!"  The same female federal agent then screamed three times at Plaintiff, "Do you want to die?!"  As the federal agents returned to their vans to depart the neighborhood, Plaintiff heard one federal agent ask their apparent leader, "What are we going to

-38-

do with them?," in reference to Plaintiff and two other peaceful bystanders.  The federal agent in charge responded, "Fuck 'em!," and the vans departed.

197.    Plaintiff Arturo Castellanos was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  Plaintiff was overcome by the gas and forced to seek refuge.

198.    Plaintiff Blanca Nieves Chils was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the street, praying the Rosary with a group of supporters, behind the barricade.  Plaintiff attempted to help people behind the barricade who were overcome by the effects of the gas attack, but she herself succumbed to the gas and was forced to return to her home further down SW 2nd Street in order to seek safety and relief from the effects of the gas attack.

199.    Plaintiff Juan Francisco Chils was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the street, praying the Rosary with a group of supporters, behind the barricade.  Plaintiff attempted to help people who were overcome by the effects of the gas attack, but was cursed at by federal agents and gassed directly two separate times.  Plaintiff was forced to withdraw from the area of the gas attack to his home further down SW 2nd Street in order to get towels and water.  He returned to the area near the barricade and attempted to help other persons overcome by the gas.

-39-

200.   Plaintiff Milagros Cruz, who is blind and suffers from epileptic seizures, was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was asleep in a tent located in the front yard of a house neighboring the Gonzalez family's home, where she had been on a hunger strike for several days to protest Cuban Communist dictator Fidel Castro's refusal to reunite Plaintiff with her nine (9) year old daughter. Plaintiff is a political dissident who was expelled from Cuba by Castro several years ago. Her daughter remains in Cuba, and has not been allowed to leave. Plaintiff, who already was in a weakened state due to her hunger strike, was awaken by screaming and the gas being sprayed by federal agents. Plaintiff was forced to leave the tent and the area behind the barricade, with the help of a friend, in order to seek safety and relief from the effects of the gas attack. Plaintiff was disoriented and terrified, and felt as though she was about to suffer an epileptic seizure.

201.   Plaintiff Cosme Damian Diago was sleeping in his apartment, along with his children, Darianne Diago and Idail Diago, located in a building directly to the east of the Gonzalez family home, when the raid began. Plaintiff had his bedroom window open and awoke to screaming and the smell of chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff called 911 and went to the doorway of his apartment building to wait for the rescue squad to arrive. While he was waiting outside for the rescue squad to arrive, federal agents sprayed him with gas.

202   Plaintiff Darianne Diago, a minor, was sleeping in her apartment, along with her mother, Aray Noda, father, Cosme Damian Diago, and her brother, Idail Diago, located in a building directly to the east of the Gonzalez family home, when the raid began. Plaintiff awoke to

-40-

screams and the smell of chemical agents, including, on information and belief, tear gas or CS gas, which was filling the apartment. Plaintiff's mother attempted to call the rescue squad for Plaintiff and washed Plaintiff's face and gave Plaintiff water to drink.

203. Plaintiff Idail Diago was sleeping in his apartment, located in a building directly to the east of the Gonzalez family home, when the raid began. Plaintiff had his bedroom window open and awoke to screaming and the smell of chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff became concerned about the safety of his father who was outside at the time. When Plaintiff went outside to get his father, who was in the front of the apartment building, federal agents sprayed him with gas.

204. Plaintiff Ramon Diago was outside his apartment building, located directly to the east of the Gonzalez family home, waiting for his ride to work when the raid began. Plaintiff was sprayed with gas by federal agents. Plaintiff fell down "in shock" into the street.

205. Plaintiff Norma Dominguez was outside her apartment building, located directly to the east of the Gonzalez family home, waiting with her husband for his ride to work when the raid began. Plaintiff was sprayed with gas by federal agents, which caused her contact lenses to dissolve in her eyes. Plaintiff was forced to return to her apartment in order to seek safety and relief from the effects of the gas attack.

206. Plaintiff Eva Espinosa was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street, behind the barricade. She tried to move closer to the Gonzalez family home to see what was

happening, but was pushed and kicked by federal agents. Plaintiff was forced to leave the area in order to seek safety and relief from the effects of the gas attack.

207.   Plaintiff Lenia Fernandez was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street, praying the Rosary with a group of supporters, behind the barricade. Plaintiff moved towards the Gonzalez family home in an effort to help people lying in the ground who had been beaten or overcome with gas. A federal agent grabbed Plaintiff by the right arm and shoved her left shoulder, shouting, "Bitch!" at her, as she fell to the ground. The federal agent then pointed a machine gun at her while she lay on the ground. Although Plaintiff was immobilized from the effects of the gas attack and the federal agent holding her at gunpoint, another federal agent approached Plaintiff and sprayed her directly in the face with gas.

208.   Plaintiff Osmany Fernandez was asleep in his home when the raid began. Plaintiff's home is next door to the Gonzalez family home. Plaintiff was awoken by the noise and gas of the raid. Plaintiff got up and went out to his front yard, where he was doused with chemical agents, including, on information and belief, tear gas or CS gas, by federal agents. Plaintiff then retreated inside, but was overwhelmed by the gas that was in his home. Plaintiff called the rescue squad for other supporters, but there was no response. Plaintiff then went to his bathroom and tried to wash his face.

209.   Plaintiff Pastera Ferrer was among the supporters assembled peacefully behind the barricade when federal agents doused her and other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the front yard of

the Gonzalez family home behind the barricade.  Plaintiff was overcome by the gas and fell to the
ground.

210.    Plaintiff Jose Antonio Freijo was among the supporters assembled peacefully behind
the barricade when federal agents doused him and the other supporters with chemical agents,
including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the
street behind the barricade.  Plaintiff tried to mover closer to the Gonzalez family home, but was
stopped by an armed federal agent.  The federal agent threatened to kill Plaintiff, then hit Plaintiff
in the leg with his weapon.  Plaintiff also was hit in the head with a club by a federal agent, and
was sprayed with more gas.

211.    Plaintiff Gilberto Gallarraga was asleep in his bedroom.  Plaintiff's house is next to
the Gonzalez family home.  When the raid began, Plaintiff awoke because he was choking and his
skin was burning.  Plaintiff got out of bed and went outside onto the street.  Plaintiff tried to
reenter his house, but the cloud of chemical agents, including, on information and belief, tear gas
or CS gas, was too dense.  Plaintiff stayed outside and moved down the street to get some fresh
air.

212.    Plaintiff Jose I. Garcia was among the supporters assembled peacefully behind the
barricade when federal agents doused him and the other supporters with chemical agents,
including, on information and belief, tear gas or CS gas   When the raid began, Plaintiff was in the
street behind the barricade   He tried to move closer to the Gonzalez family home to see what was
happening, but was pushed and kicked by federal agents   Plaintiff was forced to move away from
the area to seek safety and relief from the effects of the gas attack

-43-

213.    Plaintiff Ledia Betancourt Garcia was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. She moved closer to the Gonzalez family home to see what was happening, but was pushed and kicked by federal agents. Plaintiff was forced away from the area in order to seek safety and relief from the effects of the gas attack.

214.    Plaintiff Rosa Garcia was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. She moved closer to the Gonzalez family home to see what was happening, but was pushed and kicked by federal agents. A federal agent pushed Plaintiff to the ground, injuring her right leg. Plaintiff was forced away from the area in order to seek safety and relief from the effects of the gas attack.

215.    Plaintiff Ruben Garcia was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in a yard neighboring the Gonzalez family home behind the barricade. Plaintiff approached the barricade, but was sprayed with gas by a federal agent.

216.    Plaintiff Nixy Gomez was among the supporters assembled peacefully behind the barricade when federal agents doused her and other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was across the street

-44-

from the Gonzalez family house behind the barricade.  Plaintiff was overcome with gas and began to cry and run away.

217.   Plaintiff Carlos Alberto Gonzalez was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the street behind the barricade.  Plaintiff tried to move closer to the Gonzalez family home, but was stopped by a federal agent who brandished a weapon at Plaintiff and threatened to shoot him.  Plaintiff also was threatened with a battering ram by a federal agent.

218.   Plaintiff Jose A. Gonzalez was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the street behind the barricade.  Plaintiff tried to move closer to the Gonzalez family home, but was grabbed by federal agents and knocked to the ground.  Federal agents then sprayed Plaintiff with gas at least one more time.

219    Plaintiff Josefa R. Gonzalez was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas   When the raid began, Plaintiff was in the street behind the barricade.  Although Plaintiff remained behind the barricade at all times, federal agents ran towards Plaintiff and sprayed her with gas at least one more time, spraying her directly in the face

220    Plaintiff Yusleivy Gonzalez was asleep inside her bedroom   Plaintiff's house is across the street and several houses down from the Gonzalez family home   When the raid began,

Plaintiff awoke from the noise caused by the raid. Plaintiff got out of bed and went to open her front door to see what was happening. Plaintiff quickly closed her door to keep chemical agents, including, on information and belief, tear gas or CS gas, from pouring into her house. Plaintiff never left the inside of her home.

221.   Plaintiff Estrelva G. Guevara was among the supporters assembled peacefully behind the barricade by the press area, when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff was overcome by the gas, and was forced to leave the area in order to seek safety and relief from the effects of the gas attack.

222.   Plaintiff Pablo Hernandez was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. Plaintiff approached the barricade to see what was happening, but federal agents sprayed him with gas. Plaintiff retreated, flushed his face with water, then tried to move closer to the Gonzalez family home, but was sprayed again with gas. Plaintiff was forced to leave the area in order to seek safety and relief from the effects of the gas attack.

223.   Plaintiff Yanet Huet was asleep in her home when the raid began. Plaintiff's home is next door to the Gonzalez family home. Plaintiff was awoken by the noise and smell of chemical agents, including, on information and belief, tear gas or CS gas, from the raid. Plaintiff got up and went out to her front yard where she was doused with gas by federal agents. Plaintiff then retreated inside her home, but was overwhelmed by the gas that was in her home. Plaintiff called

the rescue squad for the supporters but there was no response. Plaintiff then went to her bathroom to wash her face.

224.    Plaintiff Martha Teresita Lara was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the front yard of a house near the Gonzalez family home behind the barricade. Plaintiff tried to move closer to the Gonzalez family home, but was seized and thrown to the ground by federal agents. After Plaintiff was thrown to the ground, a federal agent pointed his weapon at her and shouted "If you move I'll shoot." Although Plaintiff was clearly immobilized by the effects of the gas attack and the federal agent holding her at gunpoint, Plaintiff was sprayed directly in the face with gas and was kicked in the stomach by a federal agent.

225.    Plaintiff Maria Eugenia Cabrera Lazo was in her bedroom getting ready for work when the raid began. Plaintiff heard the noise of the raid went out on her front porch, where she could smell chemical agents, including, on information and belief, tear gas or CS gas.

226     Plaintiff Thomas A. Camacho, a minor, was asleep in his room when the raid began He awoke to the noise of the raid and went out on his front porch, where he could smell chemical agents, including, on information and belief, tear gas or CS gas.

227.    Plaintiff Martha Lorenzo was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the front yard of a house near the Gonzalez family home behind the barricade. Plaintiff tried to move closer to the barricade to see what was going on, but did not cross it. As the raiding party was

preparing to leave with Elian, a federal agent screamed, "Go home bitch!" at Plaintiff, then sprayed gas directly in Plaintiff's face at point blank range. Plaintiff was blinded completely and had to be led to safety.

228. Plaintiff Reina A. Machado was asleep in her bedroom. Plaintiff's home is next door to the Gonzalez family's home. She awoke when a cannister of gas broke the glass to her window and shattered over her head. Plaintiff then got up and ran out of her room because the room began to fill with gas, when a young lady jumped through her window to assist her. Plaintiff never left her home during the raid.

229. Plaintiff Anaisa Machin was asleep in her bedroom. At the time of the raid Plaintiff lived across the street and one house to the right of the Gonzalez family home. When the raid began Plaintiff was awoken from the noise and chemical agents, including, on information and belief, tear gas or CS gas, began to fill her room. At the time of the raid Plaintiff was eight months pregnant. Plaintiff never left her apartment.

230. Plaintiff Morgan Marcos was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began Plaintiff was behind the barricade in front and to the right of the Gonzalez family home. Plaintiff was approached by a federal agent, the agent told him, "Don't move or we'll shoot", while pointing a gun at Plaintiff. The federal agent then struck Plaintiff with a battering ram, threw Plaintiff to the ground and another federal agent sprayed him directly in the face with gas. Plaintiff then tried to push the battering ram away to protect himself, the federal agent then pinned Plaintiff to the ground and

-48-

said "Eat dirt". The federal agent's mask dislodged from the chin area and began to fill with gas. The federal agent then ran away.

231.    Plaintiff Alberto Martell was on the property of the Gonzalez family home. When the raid began Plaintiff was in the left rear of the Gonzalez family's home and he was doused with chemical agents, including, on information and belief, tear gas or CS gas. A federal agent then took Plaintiff along with another supporter and pushed Plaintiff to the ground. The federal agent pointed a machine gun to Plaintiff's head, put a foot on Plaintiff's back to pin Plaintiff down and doused him again with gas. The agent held Plaintiff down until the agents retreated.

232.    Plaintiff Ileana L. Martinez was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. Plaintiff tried to get away from the gas when a federal agent approached and pushed the barricade causing Plaintiff and other supporters with her to fall over the barricade. Plaintiff then got up and moved down the street when a federal agent pushed Plaintiff down and doused her again with gas. Plaintiff then moved farther down the road for fresh air.

233.    Plaintiff Jose L. Martinez was in his home. At the time of the raid, Plaintiff lived across the street and one house to the right of the Gonzalez family home. When the raid began, Plaintiff was dressing for work when he heard noises. Plaintiff proceeded to the street where he was overwhelmed by a cloud of chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff then entered his home from the rear.

234. Plaintiff Felix R. Meana was in the Gonzalez family home. When the raid began, Plaintiff was in the backyard of the Gonzalez family home, next to the swings. Plaintiff went to look over the fence when a federal agent grabbed Plaintiff's hand and threw Plaintiff to the ground. The federal agent pointed a machine gun to Plaintiff's head and told Plaintiff not to move. Plaintiff was then sprayed in the face with gas.

235. Plaintiff Troadio Mesa was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was on the front patio of a house near the Gonzalez family home behind the barricade. Plaintiff tried to move closer to the Gonzalez family home in order to assist the women from "Mothers Against Repression" who had been praying the Rosary in the front yard of the Gonzalez family home, but had been knocked to the ground by federal agents. Plaintiff was overcome by the federal agents' gas attack and collapsed to the ground. Although Plaintiff clearly had been immobilized by the gas, he was shoved by one of the federal agents.

236. Plaintiff Mario Miranda, a former Miami police officer and head of security for the Cuban American National Foundation, was among the supporters assembled outside the Gonzalez family home. When the raid began, Plaintiff was inside the front yard of the Gonzalez family home, at the invitation of the Gonzalez family. Plaintiff moved towards the rear of the Gonzalez home, where three (3) federal agents grabbed him, threw him to the ground and sprayed gas directly in his face. One of the federal agents held a machine gun to his face and screamed, "Don't move mother-fucker or we'll blow your fucking head off." Plaintiff was forced to remain on the ground, with a machine gun pointed at his head, for the duration of the raid.

-50-

237. Plaintiff Julio Mondelo was in his home with his wife Martha Mondelo. The Mondelo's home is across the street and a few houses to the left of the Gonzalez family home. When the raid began, Plaintiff was standing at his front door, when his wife came looking for him because Plaintiff is a stroke victim. His wife attempted to call the rescue squad for Plaintiff, but they did not respond. Plaintiff's home commenced to fill with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff never left his property.

238. Plaintiff Martha Mondelo was in her home with her husband Julio Mondelo. The Mondelo's home is across the street and a few houses to the left of the Gonzalez family home. When the raid began, Plaintiff heard noise and noticed that her door was open and began looking for her husband. Plaintiff's home began to fill with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff never left her property.

239. Plaintiff Jorge A. Morales was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street behind the barricade. Plaintiff tried to move closer to the Gonzalez family home, but was stopped by a federal agent. The federal agent threatened Plaintiff with a cannister of gas, then grabbed Plaintiff and pushed him against a fence. The federal agent then kicked Plaintiff in the hip and sprayed him heavily with gas.

240. Plaintiff Aray Noda and her infant daughter, Darianne Diago, were asleep in Plaintiff's bedroom. Plaintiff's house is next door to the Gonzalez family home. When the raid began, Plaintiff awoke from the noise and the smell of chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff got out of bed and looked out the window to see what was

happening. Plaintiff's home began to fill up with gas. Plaintiff attempted to contact the rescue squad on four occasions, for her child, but the rescue squad did not respond. Plaintiff then proceeded to grab her child and walk down the street to the rescue squad. Plaintiff was informed that she could take her child to the hospital, no treatment for the infant was rendered onsite nor was the infant transported to the hospital by the rescue squad.

241.    Plaintiff Zaida Nunez was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the front yard of a house near the Gonzalez family home. Plaintiff moved towards the barricade to see what was happening when a federal agent screamed, "Get back you bitch!" and shot a blast of gas into Plaintiff's face at point blank range. A federal agent then fired a second point blank blast of gas into Plaintiff's face.

242.    Plaintiff Francisco Ondarza was asleep in a home located two houses to the left of the Gonzalez family home, which is located at 2322 SW 3rd Street, Miami, Florida, when the raid began. Plaintiff walked towards the Gonzalez's home when he heard the commotion of the raid. When he approached the Gonzalez's home a federal agent sprayed him directly in the face with gas. Plaintiff lost consciousness and fell to the ground.

243.    Plaintiff Roberto Orama was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff was overcome by the cloud of gas sprayed by the federal agents. Plaintiff was forced away from the area in order to seek safety and relief from the effects of the gas attack.

-52-

244.    Plaintiff Martha Lina Oropesa was passing out water to the supporters peacefully assembled behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  Plaintiff was pushed to the ground and federal agents pointed automatic rifles at her.

245.    Plaintiff Anna Teresa Ortega was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was on the front patio of a house near the Gonzalez family home behind the barricade.  Plaintiff tried to move closer to the Gonzalez family's home in order to assist Ramon Saul Sanchez of the "Democracy Movement," who had been knocked to the ground by federal agents.  Plaintiff was kneed, stepped upon and kicked by federal agents as they left the Gonzalez family's home.

246.    Plaintiff Antonio Florentino Ortega was outside his apartment building, located directly to the east of the Gonzalez family's home, leaving for work when the raid began.  As Plaintiff put his lunch in the back of his car, he was sprayed with gas by a federal agent.  The federal agent pushed Plaintiff to the ground, threatened Plaintiff with a spray cannister, and shouted at Plaintiff in English, a language Plaintiff does not understand

247.    Plaintiff Yusledis Ortiz was on the property of the Gonzalez family's home with her husband and minor child, Lazaro Martell.  When the raid began, Plaintiff was in the back yard of the Gonzalez family home and her child was asleep in the living room  When the federal agents arrived, Plaintiff retreated into the house to retrieve her child from the living room  Plaintiff then ran into the bedroom with the Gonzalez family, including Elian Gonzalez, where they were

-53-

overwhelmed with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff stayed on the floor, covering her child, until the federal agents retreated.

248.   Plaintiff Lazaro Martell, a minor, was asleep in the living room of the Gonzalez family home. When the raid began his mother, Yusledis Ortiz, grabbed him and ran into the bedroom with the Gonzalez family, including Elian Gonzalez, where they were overwhelmed with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff stayed on the floor of the bedroom, covered by his mother, until the federal agents retreated.

249   Plaintiff Miriam Palacio was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the front yard of a house across the street from the Gonzalez family home behind the barricade. Plaintiff was overcome by the cloud of gas sprayed by the federal agents and fell to the ground disoriented. Plaintiff was forced to leave the area in order to seek safety and relief from the effects of the gas attack.

250   Plaintiff Cristobal Peraza was inside his home located adjacent to the Gonzalez family home, along with his wife, his mother-in-law and a friend. Plaintiff heard a persistent siren noise when the raid began, and ran outside to see what was happening. A federal agent sprayed Plaintiff directly in the face with gas, while using profane language. Plaintiff retreated into his home, but the house was filled with chemical agents, including, on information and belief, tear gas or CS gas, and Plaintiff had to go outside again, trying to get fresh air. Federal agents again doused Plaintiff and supporters with gas, while using profane language. Plaintiff's wife again entered the home to call the rescue squad, but there was no telephone service

251.    Plaintiff Madeleine Peraza was inside her home located adjacent to the Gonzalez family home, along with her husband, her mother and a friend. Plaintiff heard a persistent siren noise when the raid began, and ran outside to see what was happening. A federal agent sprayed Plaintiff directly in the face with gas, while using profane language. Plaintiff retreated into her home, but the house was filled with chemical agents, including, on information and belief, tear gas or CS gas, and Plaintiff had to go outside again, trying to get fresh air. Federal agents again doused Plaintiff and supporters with gas, while using profane language. Plaintiff again entered her home to call the rescue squad, but there was no telephone service.

252    Plaintiff Sergio Perez-Barroto was in his home. Plaintiff's home is across the street and a few houses to the right of the Gonzalez family home. When the raid began, Plaintiff heard yelling and loud noises so he proceeded to run out of his house onto the street. Plaintiff attempted to jump the barricade in order to assist fallen peaceful supporters. Plaintiff became very disoriented and blacked out. Plaintiff awoke in the yard of the Gonzalez family home when the raid was over.

253.    Plaintiff Angel Pina was asleep in his bedroom with his wife, Myra Pina, and their daughter, Jennifer Pina, was in her room. The Plaintiff's house is across the street from the Gonzalez family home. When the raid began, Plaintiff was awoken by screaming and noise. Plaintiff got up and went outside to see what was happening. Plaintiff gave first aid to several individuals. Plaintiff then returned to his home which was filled with chemical agents, including, on information and belief, tear gas or CS gas.

254    Plaintiff Jennifer Pina was asleep in her bedroom and her parents, Angel Pina and Myra Pina, were in their room. The Plaintiff's house is across the street from the Gonzalez family

home. When the raid began, Plaintiff was awoken by screaming and noise. Plaintiff got up and went outside to see what was happening. Plaintiff gave first aid to several individuals. Plaintiff then returned to her home which was filled with chemical agents, including, on information and belief, tear gas or CS gas.

255.   Plaintiff Myra Pina was asleep in her bedroom with her husband, Angel Pina, and their daughter, Jennifer Pina, was in her room. The Plaintiff's house is across the street from the Gonzalez family home. When the raid began, Plaintiff was awoken by screaming and noise. Plaintiff got up and went outside to see what was happening. Plaintiff gave first aid to several individuals. Plaintiff then returned to her home which was filled with chemical agents, including, on information and belief, tear gas or CS gas.

256.   Plaintiff Melissa Pumarega was among the supporters peacefully assembled in front of the Gonzalez family home when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.

257.   Plaintiff Nestor Ramos was among the supporters peacefully assembled behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was approximately 50 ft. behind the barricade. Plaintiff was sprayed directly in the face with gas by a federal agent. Plaintiff was overwhelmed by the gas and retreated for fresh air.

258   Plaintiff Otoniel Ramos was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was on the front patio of a house near the Gonzalez family home behind the barricade. Plaintiff tried to move

-56-

closer to the Gonzalez family home, but was stopped by a federal agent, who brandished a weapon in one hand and a spray cannister in the other. The federal agent pushed Plaintiff to the ground and sprayed Plaintiff in the face with gas, shouting, "Get out of here mother-fucker."

259.    Plaintiff Leonor Rivero was in her home with all the windows open. When the raid began, Plaintiff was breast feeding her infant child. Plaintiff heard noises and her home began to fill with chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff proceeded to lock herself and her infant child in her bathroom to escape the gas.

260.    Plaintiff Maria A. Riveron was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the front yard of a house across the street from the Gonzalez family home behind the barricade. Plaintiff was overcome by the gas sprayed by federal agents, and was forced to leave the area in order to seek safety and relief from the effects of the gas attack.

261.    Plaintiff Pedro Riveron was outside his home, preparing to begin his daily physical training run when he heard screaming and smelled chemical agents, including, on information and belief, tear gas or CS gas. Plaintiff moved towards the Gonzalez family home to see what was going on. Plaintiff himself was then doused with gas.

262.    Plaintiff Eduardo Rodriguez was asleep in his bedroom. Plaintiff's home is across the street from the Gonzalez family home. Plaintiff went to the roof of his house to film the raid. Federal agents yelled at him and instructed him to get down from the roof. Plaintiff was overwhelmed by the chemical agents, including, on information and belief, tear gas or CS gas, and tried to get fresh air.

-57-

263.    Plaintiff Manuel Rodriguez was in his bedroom. Plaintiff's home is located a short distance from the Gonzalez family home.  When the raid began, Plaintiff heard noise and walked towards the Gonzalez family home when the cloud of chemical agents, including, on information and belief, tear gas or CS gas, increased and intensified.

264.    Plaintiff Maria E. Rodriguez was sleeping in her house, located directly across the street from the Gonzalez family home, when the raid began.  Plaintiff was awoken by the noise of the raid, and she went outside to see what was happening.  As Plaintiff stood in her front yard, still in her pajamas, federal agents pointed their weapons at her and shouted, "Stay back or we'll shoot!," and "Get the fuck out!"  Plaintiff raised her hands in the air, and a federal agent sprayed her with gas.

265.    Plaintiff Marta Rodriguez was among the supporters peacefully assembled behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the street behind the barricade.  Plaintiff tried to get away from the gas when a federal agent approached.  The federal agent pushed the barricade causing Plaintiff and supporters with her to fall over the barricade.  Plaintiff then got up and moved down the street as federal agents again doused her with gas.  Plaintiff then moved farther down the road for fresh air.

266.    Plaintiff Patricia Rodriguez was among the supporters peacefully assembled behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas.  When the raid began, Plaintiff was in the street behind the barricade.  Plaintiff tried to get away from the gas when a federal agent approached.  The federal agent pushed the barricade causing Plaintiff and supporters with her to

-58-

fall over the barricade. Plaintiff then got up and moved down the street as federal agents again doused her with gas. Plaintiff then moved farther down the road for fresh air.

267.    Plaintiff Tomas A. Rodriguez was among the supporters peacefully assembled behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff moved towards the Gonzalez family home to see what was happening. Plaintiff was again doused with gas, turned away, and fell to the ground, overcome by gas.

268.    Plaintiff Gloria Sanchez was inside her daughter's home located adjacent to the Gonzalez family home, along with her daughter, her son-in-law and a friend. Plaintiff heard a persistent siren noise when the raid began, and ran outside to see what was happening. A federal agent sprayed Plaintiff directly in the face with gas, while using profane language. Plaintiff retreated into the home, but the house was filled with chemical agents, including, on information and belief, tear gas or CS gas, and Plaintiff had to go outside again, trying to get fresh air. Federal agents again doused Plaintiff and supporters with gas, while using profane language. Plaintiff's daughter again entered the home to call the rescue squad, but there was no telephone service.

269.    Plaintiff Ileana Santana was inside her friend's, Madeleine Peraza, home, located adjacent to the Gonzalez family home, along with her friend, her friend's husband and her friend's mother. Plaintiff heard a persistent siren noise when the raid began, and ran outside to see what was happening. A federal agent sprayed Plaintiff directly in the face with gas, while using profane language. Plaintiff retreated into the home, but the house was filled with chemical agents, including, on information and belief, tear gas or CS gas, and Plaintiff had to go outside again, trying to get fresh air. Federal agents again doused Plaintiff and supporters with gas, while using

profane language. Plaintiff's friend again entered the home to call the rescue squad, but there was no telephone service.

270.   Plaintiff Armanda Santos was in her kitchen while her husband, Orlando Santos, was asleep in his bedroom. Plaintiff's home is the second house to the right of the Gonzalez family home. When the raid began, Plaintiff was startled by the noises from the raid. Plaintiff tried to see what was happening when supporters tried to enter her home to get away from the chemical agents, including, on information and belief, tear gas or CS gas. Federal agents came onto Plaintiff's property and sprayed gas. Plaintiff never left her property during the raid.

271    Plaintiff Orlando Santos was asleep in his bedroom. Plaintiff's home is the second house to the right of the Gonzalez family home. Plaintiff had just recently been released from the hospital after surgery. When the raid began, Plaintiff was awoken by the noises from the raid. Plaintiff tried to see what was happening when supporters tried to enter his home to get away from the chemical agents, including, on information and belief, tear gas or CS gas. Federal agents came onto Plaintiff's property and sprayed gas. Plaintiff never left his property during the raid.

272    Plaintiff Diego Tintorero was standing on the roof of a house immediately to the west of the Gonzalez family home, waiving an American flag amid the clouds of chemical agents, including, on information and belief, tear gas or CS gas, sprayed by federal agents. When Plaintiff came down from the roof to the area where the news media was located, he was sprayed twice with gas by federal agents.

273    Plaintiff Carlos Treto was among the supporters peacefully assembled behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the

street behind the barricade. Plaintiff tried to get away from the gas when a federal agent approached. The federal agent pushed the barricade causing Plaintiff and other supporters to fall over the barricade. Plaintiff then got up and moved down the street as he was again doused with gas. Plaintiff moved farther down the road for fresh air.

274.   Plaintiff Carmen Valdés was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street, praying the Rosary with a group of supporters, behind the barricade. A federal agent approached Plaintiff, screamed, "You fucking bitch, get back!" and sprayed a shot of gas directly into her face at point blank range. Plaintiff became disoriented and terrified. Plaintiff's husband approached and tried to help her, whereupon a federal agent sprayed her with gas again. Plaintiff tried to moved away in order to seek safety and relief from the effects of the gas attack. Nonetheless, a federal agent sprayed Plaintiff with gas for a third time.

275.   Plaintiff Divaldo Valdés was among the supporters assembled peacefully behind the barricade when federal agents doused him and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was in the street praying the Rosary with a group of supporters behind the barricade. Plaintiff witnessed a federal agent using foul language at his wife and spraying her in the face with gas. Plaintiff moved to assist his wife, whereupon he too was sprayed twice with gas by a federal agent.

276.   Plaintiff Miriam A. Zaldivar was among the supporters assembled peacefully behind the barricade when federal agents doused her and the other supporters with chemical agents, including, on information and belief, tear gas or CS gas. When the raid began, Plaintiff was near

the press area behind the barricade. Plaintiff tried to move closer to the Gonzalez family home, but was sprayed with gas. Plaintiff became disoriented, then vomited and lost control of her bladder. A federal agent then stepped on her foot, crushing a toe. Plaintiff was overcome by the gas sprayed by federal agents, and was forced to leave the area in order to seek safety and relief from the effects of the gas attack.

277.    As a proximate result of the raid, Plaintiffs suffered substantial damages, including physical injuries resulting from the chemical agents, including, on information and belief, tear gas or CS gas, used on them and the beatings to which some of them were also subjected, as well as pain, suffering, emotional distress, fear, and loss of liberty, among others damages. In particular:

(a)    Plaintiff Hector S. Abelairas suffered eye, nose, throat and skin irritation and burning, coughing, choking, difficulty breathing and repetitive vomiting aggravated and caused hemorrhaging of the prostate. Plaintiff continues to suffer from eye irritation, difficulty breathing, headaches, sleeplessness, emotional distress and anxiety, and prostate damage, among other ailments.

(b)    Plaintiff Miguel Alejandro suffered cuts on his arms, legs and above his eyebrow. In addition, Plaintiff suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, incoherence, chest pain, knee pain, headache, anxiety and back pain, among other ailments.

(c)    Plaintiff Gregory Paul Allen suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as a rash on his hands and numbness in his fingers, among other ailments. Plaintiff continues to suffer from a rash on his hands and skin, among other ailments.

-62-

(d)     Plaintiff Abel Ramon Alonso suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, nausea, loss of voice, disorientation and anxiety among other ailments.

(e)     Plaintiff Natalie Alonso, a minor, suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash resulting from an allergic reaction, nightmares and anxiety, among other ailments.

(f)     Plaintiff Nicole Alonso, a minor, suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, nightmares and anxiety, among other ailments.

(g)     Plaintiff, Tanay Alonso suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, nausea, loss of voice, disorientation and anxiety, among other ailments.

(h)     Plaintiff Leslie Alvarez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea.  Plaintiff continues to have difficulty breathing, a sore throat, rapid heart beat, eye irritation, sinus congestion, nausea and vomiting, emotional distress and anxiety, among other ailments.

(i)     Plaintiff Elsa Anderson suffered eye, nose throat and skin irritation and burning, difficulty breathing, vomiting, incontinence, and injured her right hip when she fell on the ground after being overcome by the gas, among with other ailments.

(j)     Plaintiff Guillermo Arce suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as stomach, hip, back, and intestinal

-63-

pain, among other ailments. Plaintiff continues to suffer from sleeplessness, eye irritation and back pain, among other ailments.

   (k) Plaintiff Joel Beltran suffered bruising and contusions to the chest, head pain, sprained left wrist and hand, eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea and vomiting. Plaintiff continues to have skin rashes, sleeplessness, neck and shoulder pain, hand and finger pain, headaches, emotional distress and anxiety, among other ailments.

   (l) Plaintiff Teresa Benitez sustained bruises on her arms, back and chest. Plaintiff also suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, hives on left arm, headaches, nausea and anxiety, among other ailments.

   (m) Plaintiff Concepcion Maria Cabral suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff continues to suffer from headaches, sleeplessness and anxiety, among other ailments.

   (n) Plaintiff Nancy Canizares suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing as well as nausea, vomiting, bruises and soreness, among other ailments. Plaintiff continues to suffer from watery and irritated eyes, headaches, sleeplessness, anxiety and emotional stress, among other ailments.

   (o) Plaintiff Arturo Castellanos suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff continues to suffer from blurry vision, nose and throat irritation, headaches, sleeplessness and anxiety, among other ailments.

(p)     Plaintiff Blanca Nieves Chils suffered eye, nose and throat irritation, burning, coughing, and nausea, among other ailments.  Plaintiff continues to suffer from eye, nose and throat irritation and anxiety, among other ailments.

(q)     Plaintiff Juan Francisco Chils suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments. Plaintiff continues to suffer from headaches, anxiety, throat irritation, and sleeplessness, among other ailments.

(r)     Plaintiff Milagros Cruz suffered nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as facial swelling, among other ailments. Plaintiff continues to suffer from headaches, sleeplessness, neck, back and stomach pains, anxiety and emotional stress, among other ailments.

(s)     Plaintiff Donato Dalrymple suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments.

(t)     Plaintiff Cosme Damian Diago suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as facial swelling, among other ailments.  Plaintiff continues to suffer from watery and irritated eyes, headaches, sleeplessness, anxiety and emotional stress, among other ailments

(u)     Plaintiff Darianne Diago, a minor, suffered skin irritation, difficulty breathing, coughing, among other ailments

(v)     Plaintiff Idail Diago suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea and swelling, among other

-65-

ailments. Plaintiff continues to suffer from difficulty breathing, headaches, sharp back pain, sleeplessness and anxiety, among other ailments.

(w)     Plaintiff Ramon Diago suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as swelling, among other ailments. Plaintiff continues to suffer from eye, nose and throat irritation, coughing, headaches, backaches, chronic fatigue, sleeplessness and anxiety, among other ailments.

(x)     Plaintiff Norma Dominguez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as swelling, among other ailments. Plaintiff's contact lenses dissolved in her eyes as a result of the federal agents' gas attack. Plaintiff continues to suffer from eye irritation, chronic fatigue, severe headaches, nausea, dizziness, anxiety, sleeplessness and back pain, among other ailments.

(y)     Plaintiff Eva Espinosa suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea and heart palpitations, among other ailments  Plaintiff continues to suffer from difficulty breathing, headaches, sharp back pain, sleeplessness and anxiety, among other ailments

(z)     Plaintiff Lenia Fernandez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments Plaintiff continues to suffer from throat irritation, sleeplessness and anxiety.

(aa)     Plaintiff Osmany Fernandez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, disorientation and anxiety, among other ailments

-66-

(bb)    Plaintiff Pastera Ferrer suffered eye, nose, throat and skin irritation and burning, coughing, choking, difficulty breathing, nausea and caused Plaintiff to urinate herself. Plaintiff continues to suffer from eye irritation, sleeplessness, emotional distress and anxiety, among other ailments.

(cc)    Plaintiff Jose Antonio Freijo suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments. Plaintiff also suffered an abrasion on his head and has bruises on his foot and leg, among other ailments. Plaintiff continues to suffer from  back pain and anxiety, among other ailments.

(dd)    Plaintiff Gilberto Gallarraga suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting, disorientation, small blisters on his arms and neck for several days after the raid and anxiety, among other ailments.

**(ee)    Plaintiff Jose I. Garcia** suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments. Plaintiff continues to suffer from difficulty breathing, back pain and anxiety, among other ailments.

(ff)    Plaintiff Ledia Betancourt Garcia suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff continues to suffer from breathing difficulties, sleeplessness and anxiety, among other ailments

(gg)    Plaintiff Rosa Garcia suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments  Plaintiff continues to suffer from sleeplessness, difficulty breathing, anxiety and emotional distress, among other ailments

-67-

(hh)   Plaintiff Ruben Garcia suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments.  Plaintiff continues to suffer from asthma and breathing difficulties, among other ailments.

(ii)   Plaintiff Nixy Gomez suffered eye and skin irritation and burning, difficulty breathing and heart palpitations, among other ailments.

(jj)   Plaintiff Carlos Alberto Gonzalez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments.  Plaintiff continues to suffer from sleeplessness, anxiety and emotional distress, among other ailments.

(kk)   Plaintiff Jose A. Gonzalez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments. Plaintiff also suffered bruises on his legs from being knocked to the ground by federal agents. Plaintiff continues to suffer eye irritation, difficulty breathing, headaches, arm pain, sleeplessness and anxiety, among other ailments

(ll)   Plaintiff Josefa R. Gonzalez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments Plaintiff continues to suffer from difficulty breathing, sleeplessness, headaches, skin rash on the neck and face, emotional distress and anxiety, among other ailments

(mm)   Plaintiff Yusleivy Gonzalez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting, sleeplessness, hair loss, fatigue and anxiety, among other ailments

(nn)   Plaintiff Estrelva G Guevara suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments

-68-

Plaintiff continues to suffer eye irritation, difficulty breathing, headaches, sleeplessness and anxiety, among other ailments.

(oo)   Plaintiff Pablo Hernandez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, among other ailments. Plaintiff continues to suffer from persistent cough and a burning sensation in his stomach and throat.

(pp)   Plaintiff Yanet Huet suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, disorientation and anxiety, among other ailments.

(qq)   Plaintiff Martha Teresita Lara suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff also suffered sharp, constant stomach pains from being kicked in the stomach by federal agents. Plaintiff continues to suffer from throat and skin irritation, headaches, stomach pain, sleeplessness and anxiety, among other ailments.

(rr)   Plaintiff Maria Eugenia Cabrera Lazo suffered eye and skin irritation and difficulty breathing, anxiety and fear, among other ailments.

(ss)   Plaintiff Thomas A Camacho, a minor, suffered eye, nose, throat and skin irritation and burning, difficulty breathing, asthma, anxiety and fear, among other ailments.

(tt)   Plaintiff Martha Lorenzo suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff also suffered having her contact lenses dissolve in her eyes due to the federal gas attack. Plaintiff continues to

-69-

suffer from throat and skin irritation, headaches, stomach pain, bleeding ulcers, sleeplessness and anxiety, and an inability to wear contact lenses, among other ailments.

(uu)     Plaintiff Raina A. Machado suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, nightmares and anxiety,  among other ailments.

(vv)     Plaintiff Anaisa Machin suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting, heart palpitations, sleeplessness and anxiety, among other ailments.

(ww)   Plaintiff Morgan Marcos suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea and anxiety, among other ailments.

(xx)     Plaintiff Alfredo Martell suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, nausea, loss of voice, disorientation and anxiety, among other ailments.

(yy)     Plaintiff Ileana L. Martinez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, disorientation and anxiety, among other ailments.  In addition, Plaintiff could not remove her contacts lenses until the following day.

(zz)     Plaintiff Jose L. Martinez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, hives on left arm, headaches, nausea and anxiety, among other ailments.

(aaa)   Plaintiff Felix R. Meana suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash for two weeks, headaches, nausea and anxiety, among other ailments.

-70-

(bbb)   Plaintiff Troadio Mesa suffered eye, nose and throat irritation, watery eyes, throat constriction, burning and coughing, nausea, among other ailments. Plaintiff continues to suffer from headaches, sleeplessness, anxiety, chronic fatigue, ear, skin and eye irritation, among other ailments.

(ccc)   Plaintiff Mario Miranda suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff continues to suffer from headaches, sleeplessness, anxiety, high blood pressure, and eye irritation, among other ailments.

(ddd)  Plaintiff Julio Mondelo suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness and anxiety, among other ailments. Additionally, **Plaintiff suffered numbness in** his left arm and his stroke condition worsened.

**(eee)  Plaintiff Martha Mond**elo suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness and anxiety, among other ailments.

(fff)   Plaintiff Jorge A. Morales suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff also suffered hip pain from being kicked in the hip by federal agents. Plaintiff continues to suffer from headaches, back and hip pain and sleeplessness, among other ailments.

(ggg)  Plaintiff Aray Noda suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting, sleeplessness, fatigue and anxiety, among other ailments.

(hhh)  Plaintiff Zaida Nunez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as vomiting, among other ailments.

-71-

Plaintiff continues to suffer from eye irritation, difficulty breathing, burning and swollen skin, rapid heart beat, anxiety and emotional distress, among other ailments.

(iii)  Plaintiff Francisco Ondarza suffered eye hemorrhage, nose, throat and skin irritation and burning, coughing, choking, difficulty breathing and blood in urine.  Plaintiff continues to suffer problems from eye irritation, sleeplessness, headaches associated with his eyes, emotional distress, anxiety and depression, among other ailments.

(jjj)  Plaintiff Roberto Orama suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as an injury to the middle of his back, nausea, nervousness and disorientation, among other ailments.  Plaintiff continues to suffer from back pain, eye, nose and throat irritation, among other ailments.

(kkk)  Plaintiff Martha Lina Oropesa suffered scratches on her right arm, difficulty breathing, rash, unconsciousness, and anxiety, among other ailments.

(lll)  Plaintiff Anna Teresa Ortega suffered from eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as swollen skin, rapid heart beat and chest pain, among other ailments.  Plaintiff continues to suffer from back and side pain, headaches, eye irritation, difficulty breathing, rapid heart beat, burning and swollen skin, emotional distress and anxiety, among other ailments.

(mmm)  Plaintiff Antonio Florentino Ortega suffered eye, nose and throat irritation, watery eyes, throat constrictions, burning and coughing, nausea, among other ailments.  Plaintiff continues to suffer from headaches, sleeplessness, anxiety, chronic fatigue, skin and eye irritation, skin rashes, and tightness and cramping in his back, among other ailments.

-72-

(nnn)  Plaintiff Yusledis Ortiz suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, nightmares and anxiety, among other ailments.

(ooo)  Plaintiff Lazaro Martell, a minor, suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, nightmares and anxiety, among other ailments.  Additionally, Plaintiff was treated for over a year for anxiety and aggressive behavior as a result of the raid.

(ppp)  Plaintiff Miriam Palacio suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea and swollen skin, among other ailments  Plaintiff continues to suffer from eye irritation, difficulty breathing, sleeplessness, headaches, emotional distress and anxiety, among other ailments.

(qqq)  Plaintiff Cristobal Peraza suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness, nightmares and anxiety, among other ailments

(rrr)  Plaintiff Madeleine Peraza suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness, nightmares and anxiety, among other ailments

(sss)  Plaintiff Sergio Perez-Barroto suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, sleeplessness and anxiety, among other ailments  Additionally, Plaintiff has continuing problems with his left eye and has a gritty feeling in that eye and injured his left shoulder

(ttt)  Plaintiff Angel Pina suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting, sleeplessness and severe anxiety, among other ailments.  Additionally, Plaintiff has continued to suffer from sleeplessness, severe anxiety and shortness of breath, among other ailments.

(uuu)  Plaintiff Jennifer Pina suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting and severe anxiety, among other ailments.

(vvv)  Plaintiff Myra Pina suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, vomiting and severe anxiety, among other ailments. Additionally, Plaintiff has continued to suffer from asthma among other ailments.

(www)  Plaintiff Melissa Pumariega suffered eye, nose, throat and skin irritation and burning, eye infection, coughing, difficulty breathing, sleeplessness and anxiety, among other ailments.

(xxx)  Plaintiff Nestor Ramos suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, nightmares and anxiety, among other ailments.

(yyy)  Plaintiff Otoniel Ramos suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as swollen skin and a rapid heart beat, among other ailments.  Plaintiff continues to suffer from eye irritation, difficulty breathing, burning and swollen skin, rapid heart beat, anxiety and emotional distress, among other ailments.

(zzz)  Plaintiff Leonor Rivero suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness and anxiety, among other ailments

(aaaa)  Plaintiff Maria A Riveron suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, heart palpitations, dizziness

-74-

and blurred vision, among other ailments. Plaintiff continues to suffer from eye irritation, difficulty breathing, sleeplessness, headaches, neck and back pain, emotional distress and anxiety, among other ailments.

(bbbb)  Plaintiff Pedro Riveron suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff continues to suffer from anxiety, sleeplessness and emotional distress, among other ailments.

(cccc)  Plaintiff Eduardo Rodriguez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, nausea, nightmares and anxiety, among other ailments. Plaintiff continues to have problems with his eyes; he has been informed that he may be losing his vision.

(dddd)  Plaintiff Manuel Rodriguez suffered eye, nose, throat and skin irritation and burning, coughing and difficulty breathing, among other ailments.

(eeee)  Plaintiff Maria E. Rodriguez suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, vomiting, heart palpitations, nervousness and disorientation, among other ailments. Plaintiff continues to suffer from headaches, nausea, heart palpitations, sleeplessness and anxiety, among other ailments.

(ffff)  Plaintiff Marta Rodriguez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, disorientation and anxiety, among other ailments.

(gggg)  Plaintiff Patricia Rodriguez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, disorientation and anxiety, among other ailments.

(hhhh) Plaintiff Tomas A. Rodriguez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, incoherence, chest pain, headaches, anxiety and back pain, among other ailments.

(iiii)  Plaintiff Gloria Sanchez suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness, nightmares and anxiety, among other ailments.

(jjjj)  Plaintiff Ileana Santana suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness, nightmares and anxiety, among other ailments.

(kkkk)  Plaintiff Armanda Santos suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness and anxiety, among other ailments.

(llll)  Plaintiff Orlando Santos suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, sleeplessness and anxiety, among other ailments.

(mmmm)  Plaintiff Diego Tintorero suffered from eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as swollen skin and rapid heart beat, among other ailments. Plaintiff continues to suffer from eye irritation, difficulty breathing, rapid heart beat, burning and swollen skin, emotional distress and anxiety, among other ailments.

-76-

(nnnn)  Plaintiff Carlos Treto suffered eye, nose, throat and skin irritation and burning, coughing, difficulty breathing, rash, headaches, disorientation and anxiety, among other ailments.

(oooo)  Plaintiff Carmen Valdés suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff's contact lenses dissolved in her eyes during the gas attack. Plaintiff continues to suffer from eye, nose and throat irritation, difficulty breathing, nausea, sleeplessness, headaches, and anxiety, among other ailments.

(pppp)  Plaintiff Divaldo Valdés suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments. Plaintiff continues to suffer from eye irritation, difficulty breathing and anxiety, among other ailments.

(qqqq)  Plaintiff Miriam A. Zaldivar suffered eye, nose, throat and skin irritation and burning, coughing, choking and difficulty breathing, as well as nausea, vomiting, incontinence, leg and foot injury and swollen skin, among other ailments. Plaintiff continues to suffer from eye irritation, chronic fatigue, difficulty breathing, sleeplessness, headaches, emotional distress and anxiety, among other ailments.

### COUNT I
### (Negligence)

278.  Plaintiffs reallege paragraphs 1 through 277 as if fully set forth herein.

279  Defendant owed Plaintiffs a duty to use due care in carrying out the April 22, 2000 raid because it was reasonably foreseeable that Defendant's execution of the raid could cause harm

-77-

to peacefully assembled protesters, neighbors and passers-by, including Plaintiffs, inside and around the Gonzalez family home during the raid.

280.    Defendant, by and through its agents, servants and employees, breached this duty by failing to use reasonable care to safeguard and protect the lives of peacefully assembled protesters, neighbors and passers-by, including Plaintiffs, inside and around the Gonzalez family home during the April 22, 2000 raid.

281.    Defendant, by and through its agents, servants and employees, violated the aforementioned, well-established INS regulations, guidelines, policies and procedures, as well as the Operational Plan and Appendix adopted by the INS for the raid, when its federal agents: (1) sprayed Plaintiffs with prohibited substances such as 0-chlorobenzalmalononitrile, commonly referred to as "CS" gas or tear gas, by means of their "Israeli Gas Gun" and/or other chemical deployment devices; (2) indiscriminately sprayed Plaintiffs with unidentified chemical agents despite the lack of a "mass breech" of the Demonstrator barricade, (3) beat, kicked, punched, pushed, pointed weapons at, threatened to shoot, shouted obscenities at, and used unidentified chemical agents against Plaintiffs; (4) sprayed Plaintiffs directly in the face, at point blank range, with unidentified chemical agents, (5) recklessly pointed guns at several Plaintiffs and/or threatened to shoot them; and (6) failed to properly coordinate medical attention for those Plaintiffs who were injured by their conduct

282     As a direct and proximate result of Defendant's breach of its duty of care in carrying out the April 22, 2000 raid , Plaintiffs suffered physical injury, pain and suffering, emotional distress, embarrassment, loss of liberty and personal humiliation, among other damages

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendant for compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT II
### (Assault & Battery)

283.     Plaintiffs reallege paragraphs 1 through 282 as if fully set forth herein.

284.     Defendant, by and through its law enforcement agents, servants and employees, willfully and intentionally placed Plaintiffs in reasonable apprehension of physical injury and/or offensive physical contact, and willfully and intentionally caused physical injury and/or offensive physical contact to Plaintiffs, during the April 22, 2000 raid.

285.     At no point did Plaintiffs consent to this physical injury and/or offensive physical contact.

286.     As a proximate result, Plaintiffs suffered substantial damages, including but not limited to physical injury, pain and suffering, emotional distress, embarrassment and personal humiliation, among other damages.

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendant for compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT III
### (Intentional Infliction of Emotional Distress)

287.     Plaintiffs reallege paragraphs 1 through 286 as if fully set forth herein.

288.     Defendant, by and through its agents, servants and employees, inflicted serious emotional distress on Plaintiffs by engaging in extreme and outrageous conduct that exceeded all reasonable bounds of decency.

289.     Defendant, by and through its agents, servants and employees, acted intentionally and/or with reckless disregard for the severe emotional distress that Plaintiffs would suffer.

290     As a proximate result, Plaintiffs suffered substantial damages, physical injury, pain and suffering, emotional distress, embarrassment and personal humiliation, among other damages.

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendant for compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT IV
### (Negligent Infliction of Emotional Distress)

291.     Plaintiffs reallege paragraphs 1 through 290 as if fully set forth herein.

292.     Defendant, by and through its agents, servants and employees, negligently inflicted serious emotional distress on Plaintiffs, resulting in various physical manifestations.

293.     As a proximate result, Plaintiffs suffered substantial damages, physical injury, pain and suffering, emotional distress, embarrassment and personal humiliation, among other damages.

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendant for compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT V
### (False Imprisonment)

294.    Plaintiffs reallege paragraphs 1 through 293 as if fully set forth herein.

295.    Defendant, by and through its agents, servants and employees, unlawfully confined, detained, and/or restrained Plaintiffs against their will.

296.    Defendant, through its agents, servants and employees, intended to confine, detain and/or restrain Plaintiffs and/or acted with reckless disregard for Plaintiffs' rights.

297.    Plaintiffs were aware or conscious of the confinement, detention and/or restrain.

298     As a direct and proximate cause of Defendant's actions, Plaintiffs were deprived of their liberty and freedom and suffered substantial damages, including but not limited to physical injury, pain and suffering, emotional distress, embarrassment and personal humiliation, among other damages.

**WHEREFORE**, Plaintiffs demand judgment be entered against Defendant for compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**Plaintiffs respectfully demand a jury trial on all issues so triable.**

Respectfully submitted,

JUDICIAL WATCH, INC.


Paul J. Orfanedes
(Pro Hac Vice Application Pending)
501 School Street, S.W., Suite 500
Washington, DC  20024
Tel.: 202-646-5172
Fax.: 202-646-5199

100 SE 2nd Street, Suite 3920
Miami, Florida 33131
Tel.: 305-349-2391
Fax.: 305-349-2393

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2004 a true and correct copy of the foregoing AMENDED COMPLAINT; DEMAND FOR JURY TRIAL was served, via first class U.S. mail, postage prepaid, on the following:

> Stephen E. Handler
> Trial Attorney/Torts Branch
> Civil Division
> U.S. DEPARTMENT OF JUSTICE
> Ben Franklin Station
> P.O. Box 888
> Washington, DC  20044
>
> Larry Klayman, Esq.
> 540 Brickell Key Drive, #732
> Miami, FL  33131

Bertha Ronda