UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DONATO DALRYMPLE,  )
et al.  )
      Plaintiffs,  )
  )
  )
    v.  )  Civil Action No. 03-20588-CIV-MOORE
  )
  )
UNITED STATES OF AMERICA,  )
  )
      Defendant.  )
  )
_____  )

## UNITED STATES' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

### FIRST DEFENSE

This Court lacks subject matter jurisdiction over plaintiffs' claims in whole or in part.

### SECOND DEFENSE

The United States did not owe any duty or breach any duty to the plaintiffs.

### THIRD DEFENSE

The United States did not engage in any act that was proximately related to the plaintiffs' alleged injuries.

### FOURTH DEFENSE

Plaintiffs have failed to state a claim upon which relief can be granted.

### FIFTH DEFENSE

Plaintiffs have failed to state a claim upon which relief can be granted for intentional or negligent infliction of emotional distress.

## SIXTH DEFENSE

Plaintiffs have failed to state a claim upon which relief can be granted for false imprisonment because the United States did not imprison the plaintiffs. To the extent that the United States was involved in detaining the plaintiffs, it cannot be held liable for such conduct because said detention was undertaken pursuant to legal authority and was reasonable under the circumstances.

## SEVENTH DEFENSE

Plaintiffs have failed to state a claim for assault and battery because any use of force by any employee of the United States was privileged and reasonable.

## EIGHTH DEFENSE

The United States is not liable to any plaintiffs whose alleged injuries were proximately caused by the intentional and wrongful conduct of those plaintiffs.

## NINTH DEFENSE

The United States is not liable to any plaintiffs whose injuries were caused in whole or in part by the negligence or otherwise actionable conduct of third parties.

## TENTH DEFENSE

The United States is not liable to the plaintiffs because any action undertaken by federal employees was reasonable, lawful, justified, and/or in self-defense.

## ELEVENTH DEFENSE

Comparative fault and/or illegality bars and/or limits any recovery for any plaintiffs who engaged in conduct that caused and/or contributed to their injuries and/or who engaged in illegal and/or unlawful

activities.

## TWELFTH DEFENSE

Pursuant to 28 U.S.C. § 2402, plaintiffs are not entitled to a jury trial as to the United States under the Federal Tort Claims Act because such actions "shall be tried by the court without a jury."

## THIRTEENTH DEFENSE

The United States is not liable to plaintiffs for punitive damages, pre-judgment interest, and attorneys' fees because the United States has not waived its sovereign immunity for such claims under the Federal Tort Claims Act.

## FOURTEENTH DEFENSE

*Res judicata*, collateral estoppel and/or law of the case bar plaintiffs' claims in whole or in part.

## FIFTEENTH DEFENSE

In answer to the numbered paragraphs of the Amended Complaint, the United States avers, objects, and answers as follows:

## INTRODUCTION

1.  The United States admits that on April 22, 2000, certain agents of the Immigration and Naturalization Service ("INS") (now known as the Bureau of Citizenship and Immigration Service) engaged in an operation to reunite Elian Gonzalez, who was being held by Lazaro Gonzalez and Marisleysis Gonzalez in their home in Miami, Florida, with his father. The United States denies each and every other allegation of paragraph 1.

## PARTIES

2-96. The United States lacks sufficient information to admit or deny the allegations set forth

in paragraphs 2-96 and, therefore, denies these allegations.

97. Admitted.

## JURISDICTION AND VENUE

98. The allegations set forth in paragraph 98 are conclusions of law which do not require a response.

99. The allegations set forth in paragraph 99 are conclusions of law which do not require a response.

## FACTS

100. The United States admits that all named plaintiffs presented administrative claims on April 21, 2002, and that no administrative determination was made within six months, but it denies each and every other allegation set forth in paragraph 100.

101. The United States admits that on or about November 25, 1999, Elian Gonzalez, age six, was found floating on an innertube off the coast of Fort Lauderdale, Florida. Subsequently, the United States Coast Guard brought him to the shores of the United States. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 101 and, therefore, denies these allegations.

102. The United States admits that the INS paroled Elian Gonzalez into the United States without inspection and released him into the custody of Lazaro Gonzalez. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 102 and, therefore, denies these allegations.

103. The United States admits that Lazaro Gonzalez filed certain petitions with the INS

regarding the political disposition of Elian Gonzalez, but it lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 103 and, therefore, denies these allegations.

104. The United States admits that on January 5, 2000, Doris Meissner, the INS Commissioner, announced her decision regarding Juan Miguel Gonzalez's request to withdraw Elian Gonzalez's application for admission, recognized Juan Gonzalez's decision not to assert Elian's statutory right to apply for asylum, and asked Elian's relatives to make arrangements for his return to his father by January 14, 2000. It lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 104 and, therefore, denies these allegations.

105. The United States admits that on January 7, 2000, Lazaro Gonzalez filed an emergency ex-parte petition for an interim order and a petition for temporary custody and other relief in the circuit court of the 11th Judicial Circuit in and for Miami-Dade County, Family Division.

106. The United States admits that on January 10, 2000, Family Court Judge Rosa Rodriguez entered a temporary protective order in *Lazaro Gonzalez v. Juan Miguel Gonzalez-Quintana*, 2000 WL 419688. It lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 106 and, therefore, denies these allegations.

107. The United States admits that on January 12, 2000, (then) Attorney General Janet Reno found no reason for overturning Commissioner Meissner's decision regarding Elian Gonzalez's petition for asylum.

108. The United States admits that on January 19, 2000, Lazaro Gonzalez, as Elian Gonzalez's next friend or temporary legal guardian, filed a complaint and motion for preliminary injunction relief against Attorney General Reno. The complaint and motion speak for themselves and

plaintiffs' characterization and summary are incomplete and inaccurate and are denied for these reasons. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 108 and, therefore, denies these allegations.

109. The United States admits that Elian Gonzalez's father lawfully traveled to the United States from Cuba to take custody of Elian. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 109 and, therefore, denies these allegations.

110. The United States admits that on or about April 6, 2000, Elian Gonzalez's father arrived in the United States and then went to a location controlled by the Cuban Interest Section in or near Bethesda, Maryland. The United States denies the remaining allegations of paragraph 110.

111. The United States admits that the INS directed Lazaro Gonzalez to bring Elian Gonzalez to the Opa Locka Airport in Miami-Dade, Florida and that he was advised that the parole of the child to his care was being transferred, and that thereafter the child would be paroled to the care of his father. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 111 and, therefore, denies these allegations.

112. The United States admits that INS Executive Associate Commissioner Michael Pearson sent a letter to Lazaro Gonzalez notifying him where the transfer of Elian Gonzalez would take place. This letter speaks for itself and, because plaintiffs' characterization and/or summary of the letter is incomplete and therefore inaccurate, it is denied.

113. The United States admits that on April 12, 2000, Judge Bailey, Florida family Court, issued a decision dismissing Lazaro Gonzalez's custody petition on federal preemption and subject

matter jurisdiction grounds.

114. The United States admits that on or about April 14, 2000, INS Executive Associate Commissioner Michael Pearson sent a letter to Lazaro Gonzalez. This letter speaks for itself. Because plaintiffs' characterization and/or summary of the letter is incomplete and therefore inaccurate, it is denied.

115. The allegations set forth in paragraph 125 are conclusions of law which do not require a response.

116. Admitted.

117. The United States admits on that on or about April 18, 2000, the Eleventh Circuit entered an injunction regarding the departure and/or removal of Elian Gonzalez from the United States. The Court's decision speaks for itself and, because plaintiffs' characterization and/or summary is incomplete and therefore inaccurate, it is denied.

118. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 118 and, therefore, denies these allegations.

119. The United States admits that the INS obtained warrants to enter the Gonzalez family home in order to reunite Elian Gonzalez with his father and that the Eleventh Circuit issued an order pertaining to the child's disposition in the United States. It denies the remaining allegations of paragraph 119.

120. The United States admits that 8 U.S.C. § 1226 provides, in pertinent part, that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . ." It denies the remaining

allegations of paragraph 120.

121. The United States denies the allegations of paragraph 121.

122. The United States denies the allegations of paragraph 122.

123. The United States denies the allegations of paragraph 123.

124. The United States admits that the INS applied for a warrant to enter the Gonzalez home and that the warrant was sealed at the request of the INS. The remaining allegations of paragraph 124 are denied.

125. The United States denies the allegations of paragraph 125.

126. The United States denies the allegations of paragraph 126 that pertain to the arrest warrant being "demonstrably false and invalid." The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 126 and, therefore, denies these allegations.

127. The United States only admits on that on or about April 18, 2000, the Eleventh Circuit entered an injunction regarding the departure and/or removal of Elian Gonzalez from the United States, but that the Court's decision speaks for itself and, because plaintiffs' characterization and/or summary is incomplete and therefore inaccurate, it is denied.

128. The United States denies the allegations of paragraph 128.

129. The United States admits that an affidavit was attached to the warrants obtained by the INS. The affidavit speaks for itself. Because plaintiffs' characterization of the affidavit is incomplete and self-serving, these allegations are denied.

130. The United States admits that the affidavit attached to the warrants obtained by the INS speaks for itself. Because plaintiffs' characterization of the affidavit is incomplete and self-

8

serving, these allegations are denied.

131. The United States admits that the affidavit attached to the warrants obtained by the INS speaks for itself. Because plaintiffs' characterization of the affidavit is incomplete and self-serving, these allegations are denied.

132. The United States admits that the INS obtained warrants to enter the Gonzalez family home in order to reunite Elian Gonzalez with his father. It denies the remaining allegations of paragraph 132.

133. The United States denies the allegations of paragraph 133.

134. The United States denies the allegations of paragraph 134.

135. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 135 and, therefore, these allegations are denied.

136. The United States admits that certain members of the Gonzalez family and/or their representatives faxed certain proposed terms to Janet Reno during the late afternoon of April 21, 2000, but it lacks sufficient information to admit or deny the allegations set forth in paragraph 136 and, therefore, these allegations are denied.

137. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 137 and, therefore, these allegations are denied.

138. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 138 and, therefore, these allegations are denied.

139. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 139 and, therefore, these allegations are denied.

140. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 140 and, therefore, these allegations are denied.

141. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 141 and, therefore, these allegations are denied.

142. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 142 and, therefore, these allegations are denied.

143. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 143 and, therefore, these allegations are denied.

144. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 144 and, therefore, these allegations are denied.

145. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 145 and, therefore, these allegations are denied.

146. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 146 and, therefore, these allegations are denied.

147. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 147 and, therefore, these allegations are denied.

148. The United States admits that armed federal agents approached the front and rear of the Gonzalez family home at approximately 5:15 a.m. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 148 and, therefore, these allegations are denied.

149. The United States admits that Janet Reno, Doris Meissner, and Eric Holder

authorized the operation to reunite Elian Gonzalez with his father. The remaining allegations of paragraph 149 are denied.

150. The United States admits that Janet Reno, Doris Meissner, and Eric Holder authorized the operation to reunite Elian Gonzalez with his father, which involved armed federal agents. The remaining allegations of paragraph 150 are denied.

151. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 151 and, therefore, these allegations are denied.

152. The United States admits that barricades were erected and that many individuals, at various points in time, were located near the Gonzalez family home, but it denies that these individuals were peacefully assembled and that they stayed behind the barricades. The United States lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 152 and, therefore, these allegations are denied.

153. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 153 and, therefore, these allegations are denied.

154. The United States admits that federal agents arrived at the Gonzalez family home and that gas, including oleoresin capsicum ("OC"), was sprayed in the front of the home, which was reasonable under the circumstances. The United States also admits that shortly before the operation in question, a request was made to the Miami Police Department to borrow an Israeli Gas Gun filled with OC. Following the operation, the United States learned that the Israeli Gas Gun used during the operation may have contained O-chlorobenzalmalonotrile ("CS") gas. The United States denies that was aware that the gas in the Israeli Gas Gun was CS gas when it was being used during the operation

11

in question. The remaining allegations of paragraph 154 are denied.

155.   The United States denies that gas, including oleoresin capsicum, was sprayed behind and on the inside of the Gonzalez family home, but it lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 155 and, therefore, these allegations are denied.

156.   The United States admits that there were moments when armed federal agents pointed their weapons in the general direction of certain individuals, but it denies the remaining allegations of paragraph 156.

157.   The United States admits that the law enforcement officers involved in Operation Reunion used reasonable force, including the spraying of gas, because numerous protestors, including the plaintiffs, were intentionally and illegally interfering with the execution of the warrants in question. The United States denies that it intentionally and knowingly violated any INS regulations, guidelines, policies, and procedures with the respect to the use of other types of chemical agents, including CS, during Operation Reunion. The United States specifically denies the remaining allegations set forth in paragraph 157.

158.   The United States restates and incorporates its response to paragraph 157 as its response to paragraph 158 and specifically denies the remaining allegations set forth in paragraph 158.

159.   The United States restates and incorporates its response to paragraph 157 as its response to paragraph 159 and specifically denies the remaining allegations set forth in paragraph 159.

160    The United States restates and incorporates its response to paragraph 157 as its response to paragraph 160 and specifically denies the remaining allegations set forth in paragraph 160.

161.   The United States restates and incorporates its response to paragraph 157 as its

response to paragraph 161 and specifically denies the remaining allegations set forth in paragraph 161.

162. The United States restates and incorporates its response to paragraph 157 as its response to paragraph 162 and specifically denies the remaining allegations set forth in paragraph 162.

163. The United States restates and incorporates its response to paragraph 157 as its response to paragraph 163 and specifically denies the remaining allegations set forth in paragraph 163.

164. The United States restates and incorporates its response to paragraph 157 as its response to paragraph 164 and specifically denies the remaining allegations set forth in paragraph 164.

165. The United States restates and incorporates its response to paragraph 157 as its response to paragraph 165. Officials at the Miami Police Department were informed about the operation in question. The United States specifically denies the remaining allegations set forth in paragraph 165.

166. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 166 and, therefore, these allegations are denied.

167. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 167 and, therefore, these allegations are denied.

168. The United States admits that Elian Gonzalez was rescued off the coast of Fort Lauderdale, Florida, on or about November 25, 1999. It lacks sufficient information to admit or deny the remaining allegations set forth in paragraph 168 and, therefore, these allegations are denied.

169. The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 169 and, therefore, these allegations are denied.

170. The United States lacks sufficient information to admit or deny the allegations

set forth in paragraph 170 and, therefore, these allegations are denied

171.    The United States admits that certain armed federal agents pointed their weapons in the general direction of certain individuals. It denies the remaining allegations of paragraph 171.

172.    The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 172 and, therefore, these allegations are denied.

173.    The United States admits that doors, furniture and a religious statue were inadvertently damaged by federal agents during the search for Elian Gonzalez in the Gonzalez family home. It denies the remaining allegations of paragraph 173.

174.    The United States admits that plaintiff Donato Dalrymple was holding Elian in his arms and that they were in a closet in a bedroom of the Gonzalez family home, but it denies the remaining allegations of paragraph 174.

175.    The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 175 and, therefore, these allegations are denied.

176.    The United States admits that certain federal agents demanded that Elian be released to their custody, but it lacks sufficient information to admit or deny the other allegations set forth in paragraph 176 and, therefore, these allegations are denied.

177.    The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 177 and, therefore, these allegations are denied.

178.    The United States admits that Betty Mills was armed and entered the room with a blanket and seized the child. It denies the remaining allegations of paragraph 178.

179.    The United States admits that the federal agents backed their way out to a waiting

van and that weapons were pointed in the general direction of certain individuals. It denies the remaining allegations of paragraph 179.

180.   The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 180 and, therefore, these allegations are denied.

181.   Admitted.

182.   The United States lacks sufficient information to admit or deny the allegations set forth in paragraph 182 and, therefore, these allegations are denied.

183-276.   The United States denies the allegations set forth in paragraphs 183 through 276.

277.   The United States denies the allegations of paragraph 277, including its subparts (a) through (qqqq), and demands plaintiffs present proof of their alleged injuries.

## COUNT I
(Negligence)

278.   The United States restates and incorporates its responses to paragraphs 1 through 277 as though they were fully set forth herein.

279-280.   The United States denies the allegations set forth in paragraphs 279-280.

281.   The United States restates and incorporates its responses to paragraphs 154 and 157 as its response to paragraph 281, but it denies the remaining allegations set forth in paragraphs 281.

282.   The United States denies the allegations set forth in paragraph 282. The United States further denies that plaintiffs are entitled to any compensation, including pre- and post-judgment interest, attorneys' fees, costs, or any other relief whatsoever.

15

## COUNT II
### (Assault & Battery)

283. The United States restates and incorporates its responses to paragraphs 1 through 282 as though they were fully set forth herein.

284-286. The United States denies the allegations set forth in paragraphs 284 through 286. The United States further denies that plaintiffs are entitled to any compensation, including pre- and post-judgment interest, attorneys' fees, costs, or any other relief whatsoever.

## COUNT III
### (Intentional Infliction of Emotional Distress)

287. The United States restates and incorporates its responses to paragraphs 1 through 286 as though they were fully set forth herein.

288-290. The United States denies the allegations set forth in paragraphs 288 through 290. The United States further denies that plaintiffs are entitled to any compensation, including pre- and post-judgment interest, attorneys' fees, costs, or any other relief whatsoever.

## COUNT IV
### (Negligent Infliction of Emotional Distress)

291. The United States restates and incorporates its responses to paragraphs 1 through 290 as though they were fully set forth herein.

292-293. The United States denies the allegations set forth in paragraphs 292 through 293. The United States further denies that plaintiffs are entitled to any compensation, including pre- and post-judgment interest, attorneys' fees, costs, or any other relief whatsoever.

## COUNT V
(False Imprisonment)

294. The United States restates and incorporates its responses to paragraphs 1 through 293 as though they were fully set forth herein.

295-298. The United States denies the allegations set forth in paragraphs 295 through 298. The United States further denies that plaintiffs are entitled to any compensation, including pre- and post-judgment interest, attorneys' fees, costs, or any other relief whatsoever.

Dated: Sept. 13, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

PHYLLIS J. PYLES
Director, Torts Branch
Civil Division


STEPHEN F. HANDLER
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Washington, D.C. 20044
(202) 616-4279
(202) 616-5200 (fax)

Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on _Sept. 14, 2004_, I caused to be served upon the following counsel a true and correct copy of the United States' Answer to Plaintiffs' Amended Complaint, via First Class Mail to:

        Paul Orfanedes
        Judicial Watch, Inc.
        501 School Street
        Suite 500
        Washington, DC  20024
        Attorney for the plaintiffs

        Larry Klayman
        P.O. Box 31007
        Miami, FL  33231

        _/s/ Stephen E. Handler_
        Stephen E. Handler