UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DONATO DALRYMPLE, | ) | |
| et al. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-20588-CIV-MOORE |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

JOINT PRETRIAL STIPULATION

1.    STATEMENTS OF THE CASE BY EACH PARTY

    A.    Plaintiffs' Statement of the Case

    Plaintiffs are ninety-six persons who allege they were injured by agents of the former

Immigration and Naturalization Service ("INS") during the April 22, 2000, raid that forcibly removed

six-year old Cuban asylum-seeker Elian Gonzalez from the custody of Lazaro, Angela, and Marisleysis

Gonzalez in Miami, Florida and returned him to Cuba. Many of the Plaintiffs had gathered outside the

Gonzalez family home to show their support for the family's efforts to allow the boy remain in the United

States. Others were neighbors of the Gonzalez family and were sleeping or going about their business

in and around their homes. All Plaintiffs were exposed to oleoresin capsicum (as known as "OC" or

"pepper spray") and O-chlorobenzalmalononitrile (also known as "CS" or "tear gas") released by INS

agents during the raid.

    Plaintiffs bring this action against the United States under the Federal Tort Claims Act

("FTCA"). Their lawsuit includes claims for assault and battery, intentional infliction of emotional

distress, negligence, and negligent infliction of emotional distress. Plaintiffs' injuries included eye, nose,

throat and skin irritation and burning, coughing, choking and difficulty breathing, among other ailments

caused by exposure to tear gas and/or pepper spray, as well as injuries caused by being assaulted physically and emotional distress.

      B.    United States' Statement of the Case

Plaintiffs filed this action against the United States purporting to invoke jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The suit arises out of the Immigration and Naturalization Service's ("INS")[1] execution of lawful search and administrative arrest warrants for the removal of Elian Gonzalez ("Elian"), who was being held by the Gonzalez family in their home, to return him to his father. Plaintiffs, individuals who were present during Elian's removal, have asserted claims for negligence, assault and battery, intentional and negligent infliction of emotional distress, and false imprisonment.

2.    BASIS FOR FEDERAL JURISDICTION

Plaintiffs purport to invoke the Court's subject matter jurisdiction under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671-2680. The United States disputes that the Court has subject matter jurisdiction over plaintiff's negligence claim to the extent that it claims that the United States can be held liable solely based upon the violation of federal law including, but not limited to, statutes, regulations, rules, procedures, policies, guidelines, plans, and/or operating instructions. The United States also disputes that the Court has subject matter jurisdiction over plaintiffs' claims for punitive damages, pre-judgment interest, and attorneys' fees because the United States has not waived its sovereign immunity for such claims under the Federal Tort Claims Act. *See* 28 U.S.C. §§ 1346(b), 2671-2680.

3.    THE PLEADINGS RAISING THE ISSUES

The Complaint (with respect to Sandra Cobas), Answer, Amended Complaint (with respect to all other plaintiffs), and the Answer to the Amended Complaint. Plaintiff Sandra Cobas also adopts by reference the Amended Complaint.

---

[1]    The Immigration and Naturalization Service is now incorporated within the Department of Homeland Security.

4.      UNDISPOSED MOTIONS

The United States' Motion for Summary Judgment or, in the Alternative, for Dismissal.

5.      STATEMENT OF UNCONTESTED FACTS

A.      On April 22, 2000, the Immigration and Naturalization Service, by and through its employees as well as other law enforcement officers, conducted a law enforcement operation known as "Operation Reunion," wherein it executed search and administrative arrest warrants for Elian Gonzalez who was with the Gonzalez family at 2319 N.W. 2nd Street, Miami, FL, in order to return Elian to his father. The warrants were supported by probable cause.

B.      Shortly before the operation in question, a request was made to the Miami Police Department to borrow an Israeli Gas Gun. The Miami Police Department lent the INS an Israeli Gas Gun that contained CS.

C.      When the law enforcement officers arrived at the scene, more than 100 protestors were gathered near the Gonzalez home.. Defendant's agents arrived in unmarked vehicles.

D.      Certain protestors jumped over or pushed down the barricades, ran to the Gonzalez house, formed human chains, and/or threw objects. No arrests were made by federal agents during Operation Reunion except for six-year old Elian Gonzalez.

E.      Certain INS officers sprayed gas during Operation Reunion.

F.      The INS officers used certain physical force during Operation Reunion.

G.      The following plaintiffs do not allege claims for false imprisonment: Abel Alonso, Natalie Alonso, Nicole Alonso, Tanay Alonso, Leslie Alvarez, Elsa Anderson, Sergio Perez-Barroto, Thomas Camacho, Arturo Castellanos, Blanca Chils, Juan Chils, Cosme Diago, Darianne Diago, Idail Diago, Ramon Diago, Norma Dominguez, Eva Espinosa, Osmany (Osmani) Fernandez, Pastora Ferrer, Jose Freijo, Gilberto Gallaraga, Ledia Betancourt Garcia, Rosa Garcia, Ruben Garcia, Jose Gonzalez, Josefa Gonzalez, Nixy Gomez, Yusleivy Gonzalez, Estelva Guevara, Pablo Hernandez, Yanet Huet, Maria Lazo, Marta Lorenzo, Reina Machado, Anaisa Machin, Lazaro Martell, Jose Martinez, Jorge Morales, Martha Mondelo, Julio Mondelo, Aray Noda, Zaida Nunez, Roberto Orama, Ana Ortega, Antonio F. Ortega, Martha Oropesa (Pumariega), Yusledis Ortiz, Miriam

3

Palacio, Cristobal Peraza, Madeleine Peraza, Angel Pina, Jennifer Pina, Mayra Pina, Melissa Pumariega, Nestor Ramos, Otoniel Ramos, Leonor Rivero, Maria Riveron, Pedro Riveron, Eduardo Rodriguez, Manuel Rodriguez, Marta Rodriguez, Maria Rodriguez (Riera), Patricia Rodriguez, Tomas Rodriguez, Ileana Santana, Armanda Santos, Gloria Sanchez, Diego Tinterero, Carlos Treto, Carmen Valdes, Divaldo Valdes, and Miriam Zaldivar.

H.      The following plaintiffs have dismissed and/or intend to dismiss their actions: Gregory Paul Allen, Conception Maria Cabral, Milagros Cruz, Reina Machado, Anna Teresa Ortega, Orlando Santos, and Ileana Martinez.  Ms. Cabral has appealed the dismissal of her action.

6.      STATEMENT OF CONTESTED FACTS

A.      Whether the conduct of certain plaintiffs constituted resistence, obstruction and/or opposition to the INS officers' efforts to execute the warrants in question.

B.      Whether plaintiffs sustained any physical injuries as a result of the conduct of the INS officers during Operation Reunion.

C.      Whether plaintiffs sustained any emotional injuries as a result of the conduct of the INS officers during Operation Reunion.

D.      Whether plaintiffs sustained any long-term (chronic) injuries as a result of the conduct of the INS officers during Operation Reunion.

E.      Whether the Defendant's display of force, use of physical force and/or the deployment of CS and/or OC gas was reasonable or constituted excessive and unreasonable force.

F.      Whether Federal Riot Grenades were used by Defendant's agents and whether such grenades contained CS gas.

G.      Whether Defendant's agents deployed or sprayed gas at Plaintiffs as the agents first approached the Plaintiffs gathered behind the barricade and/or before any objects were thrown into the street.

H.      Whether those persons who threw objects into the street after being sprayed with tear gas and/or pepper spray were acting in self-defense.

I.      Whether there was a "mass breech of the barricade" by those persons

4

gathered behind the barricade.

J.      Whether any persons, including certain plaintiffs, who crossed the barricade were non-violent and/or complied with the orders of Defendant's agents.

K.      Whether Defendant's agents sprayed some Plaintiffs with CS and/or OC spray at point blank range, when such Plaintiffs were already on the ground, and/or while Plaintiffs were lawfully on their own property.

L.      Whether the OC spray used by Defendant's agents was "too hot."

M.      Whether Defendant's agents used an unreasonable amount of CS and/or OC gas under the circumstances.

N.      Whether certain INS officers sprayed gas in the front of the Gonzalez home, rear and to the sides of the Gonzalez home and other places in the Gonzalez family neighborhood.  Daniel Dargan, the federal agent who used the Israeli Gas Gun, indiscriminately sprayed supporters behind the barricade with gas.  CS gas has a distinct odor as opposed to OC spray.  CS gas is a "dangerous weapon" that can cause serious bodily injury and/or death.  CS gas is toxic and poisonous, unlike OC spray which the body tries to absorb as food.  OC spray can cause serious bodily injury or death if it is too hot.  OC spray can cause serious bodily injury or death if it is used in large quantities under certain circumstances.

O.      Whether the INS officers also stepped on, kicked, gassed, punched, beat, shouted obscenities and racial slurs at, pointed guns at, and threatened to shoot supporters, passers-by and Gonzalez family neighbors.

P.      Whether officers observed any weapons on any civilians during Operation Reunion.

Q.      Whether some of the Plaintiffs who were located in front of the barricade and/or on the Gonzalez property were invitees and/or neighbors of the Gonzalez family.

7.      STATEMENT OF THE ISSUES OF LAW ON WHICH THERE IS AGREEMENT

A.      The United States is not liable to plaintiffs for punitive damages, pre-judgment interest, and attorneys' fees because sovereign immunity has not been waived for such claims under the Federal Tort Claims Act. *See* 28 U.S.C. §§ 1346(b), 2671-2680.

B.      Plaintiffs are not entitled to a jury trial as to the United States under the Federal Tort Claims Act because such actions "shall be tried by the court without a jury." 28 U.S.C. § 2402.

C.      A battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent. *Sullivan v. Atlantic Fed. Sav. & Loan Ass'n*, 454 So.2d 52, 54 (Fla. 4th DCA 1984), review denied, 461 So.2d 116 (Fla.1985); *Chorak v. Naughton*, 409 So.2d 35, 39 (Fla. 2d DCA 1981). "An 'assault' is an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." *Sullivan v. Atlantic Federal Savings & Loan Ass'n*, 454 So. 2d 52, 54 (Fla. Dist. Ct. App. 1984).

D.      False imprisonment is the unlawful restraint of a person against his will. *Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1367 (M.D. Fla 1999) (citing *Johnson v. Weiner*, 155 Fla. 169, 171 (Fla. 1944). The "gist of [a false imprisonment] action is the unlawful detention of the person and the deprivation of his or her liberty." *Id.* To be "unlawful" as the tort of false imprisonment is defined in Florida, the detention must be unreasonable and unwarranted under the circumstances. *Id.* In addition, the defendant must have detained the plaintiff for the purpose of imposing confinement, or with the knowledge that such confinement will, with a substantial certainty, result. *Id.*

E.      To establish a claim for intentional infliction of emotional distress, a plaintiff is required to show: "(1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) proof that the conduct caused the severe emotional distress." *Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp.2d 1187, 1199 (M.D. Fl. 2002). Outrageous conduct has been defined as "outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985). "The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id.* at 279

6

(quoting Restatement (Second) of Torts § 46 (1965)). "Conduct is intentional where the actor knows that severe distress is certain, or substantially certain to result from his conduct." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). The determination of whether a plaintiff has alleged conduct which meets the essential elements for a claim for intentional infliction of emotional distress is a matter of law to be decided by the court. *Gonzalez-Jimenez de Ruiz* , 231 F. Supp.2d at 1199.

8.   STATEMENT OF THE ISSUES OF LAW ON WHICH THERE IS NO AGREEMENT

A.   Plaintiffs' Statement of the Law

1.   Under the FTCA, the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Violation of a federal statute or regulation by government officials does not create a cause of action under the FTCA. *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081 (11th Cir. 2004). The Florida Supreme Court has stated that a written policy or manual "may be instructive in determining whether the alleged tortfeasor acted negligently...." *Pollack v. Florida Department of Highway Patrol*, 2004 Fla. LEXIS 902, *18 (June 10, 2004); *see also City of Pinellas Park v. Brown*, 604 So. 2d 1222, 1226 (Fla. 1992); *Sierra v. Associated Marine Institutes, Inc.*, 850 S. 2d 582, 595 (Fla. 2003).

2.   Florida Statute § 843.02, "Resisting officer without violence to his or her person," states in part: "[w]hoever shall resist, obstruct, or oppose any . . . person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree. . . ." A defendant cannot be found guilty of violating Florida Stat. § 843.02 unless the defendant: (1) knew the person he was resisting was a law enforcement officer; (2) opposed the officers while conducting a lawful duty; and (3) was advised to cease or stop his or her behavior. *See Singer v. State of Florida*, 647 So.2d 1021 (Fla. Dist. Ct. App. 1994); *D.G. v. State of Florida*, 661 So.2d 75 (Fla. Dist. Ct. App. 1995); and *M.M. v. State of Florida*, 674 So.2d 883 ( Fla. Dist. Ct. App. 1996). Under Florida law, "it is a crime not only to oppose or to obstruct a law officer in the execution of the officer's duty, but also to attempt to oppose or obstruct the officer. And none of these crimes require violence or the offer to do violence." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558-59 (11th Cir. 1993). In Florida, a person may resist the use of excessive force. *See Wright v. State fo*

7

*Florida*, 705 So. 2d 102, 104 (Fla. Dist. Ct. App. 1998).

        3.     18 U.S.C. § 2231 states in part: "Whoever forcibly assaults, resists, opposes, prevents, impedes, intimidates, or interferes with any person authorized to serve or execute search warrants or to make searches and seizures while engaged in the performance of his duties with regard thereto or on account of the performance of such duties, shall be fined under this title or imprisoned not more than three years, or both." In Florida, a person may resist the use of excessive force. *See Wright v. State fo Florida*, 705 So. 2d 102, 104 (Fla. Dist. Ct. App. 1998).

        4.     Pursuant to Florida law, police officers are privileged to use reasonable force in order to carry out their law enforcement activities. *See* Fla. Stat. § 776.05 (West 2003) ("A law enforcement officer . . . is justified in the use of force . . . [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest"). "Whether the force used is reasonable is a question of fact to be determined in light of the circumstances of each particular case. In any case the officer can never use more force than reasonably appears to be necessary, or subject the person arrested to unnecessary risk of harm." *Miami v. Albro*, 120 So. 2d 23, 26 (Fla. Dist. Ct. App. 1960). In Florida, a person may resist the use of excessive force. *See Wright v. State fo Florida*, 705 So. 2d 102, 104 (Fla. Dist. Ct. App. 1998).

        5.     "To succeed on a negligence claim in Florida, Plaintiff must 'show that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, that the breach caused the plaintiff's injury, and that damages are owed.'" *Miles v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715, 722 (11th Cir. 2002) (citing *Ewing v. Sellinger*, 758 So. 2d 1196, 1197 (Fla. Dist. Ct. App. 2000)). "Florida law provides that the duty element of negligence focuses on whether the defendant's conduct forseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* at 723. "This analysis applies equally to the actions of both public and private defendants." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001). "[W]hen a defendant, including a police officer, by his or her conduct creates a foreseeable zone of risk, the law imposes a duty owed by the defendant to all individuals within the zone to act with reasonable care." *Id.* "A proximate cause produces the result in continuous sequence, and without which the result would

8

not have occurred." *Tampa Electric Co. v. Jones*, 138 Fla. 746, 749 (1939). The standard for proving proximate cause "has traditionally been one of probability." *Lazenby v. Beisel* , 425 So. 2d 84, 86 (Fla. Dist. Ct. App. 1983).

      6.    In Florida, traditionally "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries sustained in an impact." *Rowell v. Holt*, 850 So. 2d 474, 477-78 (Fla. 2003). "The impact rule is not, however, an inflexible, unyielding rule of law, so sacred that it must be blindly followed without regard to context." *Id.* at 478. "Exceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding application of the impact rule." *Id.*

    B.    United States' Statement of the Law

      1.    It is a "well established principle that the violation of a federal statute or regulation by government officials does not create a cause of action under the FTCA." *See, e.g., Art-Metal-U.S.A. v. United States*, 753 F.2d 1151, 1157 (D.D.C. 1985) (citing *Zabala Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1977), *cert. denied*, 435 U.S. 1006 (1978); *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081 (11th Cir. 2004); *Hardaway Co. v. United States Army Corps of Engineers*, 980 F.2d 1415 (11th Cir. 1993). This principle is grounded in the limitation upon the FTCA's waiver of sovereign immunity which provides that the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This waiver "cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs." *See, e.g., United States v. Smith*, 324 F.2d 622, 624-25 (5th Cir. 1963); *see also, Sellfors v. United States*, 697 F.2d 1362 (11th Cir. 1983), *cert. denied*, 468 F.2d 1204 (1984).

      2.    Florida law prohibits resistence, obstruction or opposition to law enforcement operations. Florida Statute § 843.02, "Resisting officer without violence to his or her person," states in pertinent part: that "[w]hoever shall resist, obstruct, or oppose any . . . person legally authorized to

execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree. . . ."  Florida courts, in interpreting Fla. Stat. § 843.02, have held that violations occur when individuals block an officer's path, refuse to obey a command and/or engage in conduct that appears threatening to an officer's efforts to carry out his authorized duties and responsibilities. *See H.A.P. v. State*, 834 So.2d 237 (Fla. Dist. Ct. App. 2002); *Francis v. State*, 736 So.2d 97 (Fla. Dist. Ct. App. 1999); *M.M. v. State*, 674 So.2d 883 (Fla. Dist. Ct. App. 1996); *Wilkerson v. State*, 556 So.2d 453 (Fla. Dist. Ct. App. 1990), *review denied*, 564 So.2d 1088 (Fla. 1990).

       3.      Under Florida law, "it is a crime not only to oppose or to obstruct a law officer in the execution of the officer's duty, but also to attempt to oppose or obstruct the officer.  And none of these crimes require violence or the offer to do violence." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558-59 (11th Cir. 1993) (holding that the plaintiff's conduct of continuing to talk after being told to keep quiet constituted interference with the execution of a law enforcement officer's duties where the area was crowded and the officer knew that defendant resisted arrest on a previous occasion). *See L.S.T., Inc. v. Crow*, 49 F.3d 679, 681, 685 (11th Cir. 1995) (holding that plaintiff resisted law enforcement officer by refusing to comply with three lawful orders to leave a crowded parking lot so that order could be restored); *Dreske v. Holt*, 536 F.2d 105, 106-107 (5th Cir. 1976) (holding that plaintiff resisted arrest by refusing to accompany police officers to sheriff's department to post bond and locking himself inside his car during a routine traffic stop).

       4.      Federal law also prohibits the interference with the execution of search warrants.  18 U.S.C. § 2231 states in pertinent part:

> Whoever forcibly assaults, resists, opposes, prevents, impedes, intimidates, or interferes with any person authorized to serve or execute search warrants or to make searches and seizures while engaged in the performance of his duties with regard thereto or on account of the performance of such duties, shall be fined under this title or imprisoned not more than three years, or both.

Courts have interpreted 18 U.S.C. § 2231 to prohibit "[a]nything which interferes with the physical ability of officers of the law...." *Lewin v. United States*, 62 F.2d 619, 620 (1st Cir. 1933) (holding

that placing an incapacitating smoke screen in the path of an officer pursuing by boat constituted interference); *United States v. Johnson*, 412 F.2d 906 (5th Cir. 1969) (defendant who, after being advised of identity of officers and their purpose, interfered with officer in the execution of search warrant by continuing to destroy evidence and brandishing a weapon).

5.     Florida has long recognized the well-established principle that "no court shall aid men who found their cause of action upon illegal acts." *Goldring v. Johnson*, 65 Fla. 381, 382 (1913) (quoting *Cook v. Fernandez*, 11 Fla. 100 (1864)). Florida courts have consistently barred claims that are grounded on illegal activities. *Goldring*, 65 Fla. at 382 (dismissing claim for recovery under contract requiring the defendant to buy liquor from plaintiff and resell it using plaintiff's license contrary to law); *Hauer v. Thum*, 67 So.2d 643, 645 (Fla. 1953) (holding that defendant in a contract action cannot use defense that contract under which plaintiff brought suit was consummated pursuant to a conspiracy to defraud the lending bank); *Yost v. Rieve Enterprises, Inc.*, 461 So.2d 178, 184 (Fla.App. 1984) (holding that broker could not bring action against seller of real property for unpaid commission where broker participated in seller's defrauding the buyer).

6.     Pursuant to Florida law, police officers are privileged to use reasonable force in order to carry out their law enforcement activities. *See* Fla. Stat. § 776.05 (West 2003) ("A law enforcement officer . . . is justified in the use of force . . . [w]hich he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest"). Accordingly, "activity that would otherwise subject a person to liability in tort for assault does not constitute tortious conduct if the actor is "privileged' to engage in that conduct." *Hinojosa v. City of Terrell*, 834 F.2d 1223 (5th Cir. 1988), *cert. denied*, 493 U.S. 822 (1989), citing *Restatement (Second) of Torts* 10; *W. Keeton, Prosser and Keeton on Torts* 16 (5th ed. 1984); *see also*, *Andrade v. United States*, 116 F. Supp. 2d 778 (W.D. Tex. 2000), *aff'd*, 338 F.3d 448 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1655 (2004); *Garza v. United States*, 881 F. Supp. 1103 (S.D. Tex. 1995).

7.     In a negligence action, the burden of proof is on the plaintiff to show that: (1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the

11

defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages. *See Lake Parker Mall, Inc. v. Carson*, 327 So.2d 121, 123 (Fla. 2d DCA 1976). It is axiomatic that a plaintiff must plead and prove that the defendant's negligent act was the cause of his injuries. *Salinetro v. Nystrom*, 341 So.2d 1059 (Fla. 3d DCA 1977); *McWhorter v. Curby*, 113 So.2d 566 (Fla. 2d DCA 1959); W. Prosser, The Law of Torts 236 (4th ed. 1971).

8.      "The general rule seems to be that it is necessary to demonstrate legal causation by expert testimony where this issue is beyond the common knowledge of laymen." *Greene v. Flewelling*, 366 So.2d 777, 779 (Fla. Dist. Ct. App.), *cert. denied*, 374 So.2d 99 (Fla. 1979), citing W. Prosser, The Law of Torts 241 (4th ed. 1971); *Biedenharn Candy Co. v. Moore*, 184 Miss. 721, 186 So. 628 (1939); and *Parris v. Johnson*, 3 Wash.App. 853, 479 P.2d 91 (1970). Although several recent Florida cases have found that expert testimony is not required to establish legal causation even where the issue in question is beyond the common knowledge of laymen, these cases do not "obviate the claimant's burden of demonstrating legal causation by some competent evidence in order for him to recover for his injuries." *Greene*, 366 So.2d at 779.

9.      The Florida Supreme Court has also found that a defendant's actions that are otherwise "legally permissible"and "privileged under the circumstances," as a matter of law, cannot be considered the type of "atrocious conduct" needed to establish a claim for intentional infliction of emotional distress. *Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277, 278-79; *see also*, *Baker v. Fla. Nat'l Bank*, 559 So.2d 284 (Fla. 4th Dist. App. 1990).

10.      In order to state a claim for negligent infliction of emotional distress, a plaintiff must show that (1) the defendant's negligent act caused plaintiff a demonstrable injury, and (2) this physical injury caused plaintiff's emotional distress. *See R.J. v. Humana of Florida, Inc.*, 652 So.2d 360, 363 (Fla. 1995).

9.      STATEMENT OF THE ISSUES OF LAW TO BE DETERMINED BY THE COURT

A.      Whether Defendant's agents' deployment of CS and/or OC spray during Operation Reunion constitutes negligence or was privileged and not tortious?

B.      Whether the Defendant's agents' deployment of CS and/or OC spray during Operation

Reunion was a use of excessive force under the circumstances?

C.     Whether the Defendant's agents' deployment of CS and/or OC spray during Operation Reunion constituted an assault and/or battery on any Plaintiffs?

D.     Whether the deployment of CS and/or OC spray by Defendant's agents during Operation Reunion constituted  intentional and/or negligent infliction of emotional distress on any Plaintiffs?

E.     Whether the Defendant's agents' display and/or use of physical force during Operation Reunion constituted an assault and/or battery on any Plaintiffs?

F.     Whether the Defendant's agents' display and/or use of physical force during Operation Reunion constituted intentional and/or negligent infliction of emotional distress on any Plaintiffs?

G.     Whether the Defendant's agents' display and use of physical force during Operation Reunion was reasonable under the circumstances?

H.     Whether the Plaintiffs who were restrained by Defendant's agents during Operation Reunion were falsely imprisoned?

I.     Whether the plaintiffs' long-term (chronic) injuries were proximately related to the negligence alleged against the INS officers who were executing the warrants in question?

J.     Whether the conduct of certain Plaintiffs constituted resistence, obstruction and/or opposition to Defendant's agents' efforts to execute warrants in violation of federal and/or Florida law and, therefore, bars their claims under the doctrine of illegality?

K.     Whether the Court lacks subject matter jurisdiction over plaintiffs' negligence claims solely based upon the violation of federal law including, but not limited to, statutes, regulations, rules, procedures, policies, guidelines, plans, and/or operating instructions?

L.     Whether Plaintiffs who might have resisted the use of force by Defendant's agents were acting in self-defense?

M.     Whether the plaintiffs' alleged injuries were caused in whole and/or part by their own negligence, wrongful conduct or that of a third party for whose acts the United States would not be

liable?

    N.    Whether Defendant's agents' conduct constituted a violation of the following:

•    8 C.F.R. 287.8 (a)(iii) ("A designated immigration officer shall always use the minimum non-deadly force necessary to accomplish the officer's mission and shall escalate to a higher level of non-deadly force only when such higher level of force is warranted by the actions, apparent intentions, and apparent capabilities of the suspect, prisoner, or assailant.").

•    *Enforcement Standard: Use of Nondeadly Force* at IV (B) ("The designated immigration officer shall always use the minimum nondeadly force necessary to accomplish the officer's mission and shall escalate to a higher level of nondeadly force only when such level is warranted by the situation, including the actions, apparent intentions and capabilities of the suspect, the prisoner, or the assailant.").

•    *Enforcement Standard: Use of Nondeadly Force* at IV (D) (2) (Prohibits the use of CS gas).

•    *Investigator's Handbook* at Chapter 5-2.5 "Use of Force" ("The use of force in dealing with individuals with whom investigators have contact is permissible only to the degree that is necessary to protect oneself or a third party, to effect an arrest, or to prevent the escape of someone in custody.").

•    *Border Patrol Handbook* at Chapter 5-8 ("Patrol agents may use force only to the degree necessary to protect themselves or third parties, to effect arrests, or to prevent the escape of persons in custody.").

•    *Border Patrol Handbook* at Chapter 17-5 ("Patrol agents may use force only to the degree necessary to protect themselves or third parties, to effect arrests, or to prevent the escape of persons in custody.").

•    *Border Patrol Handbook* at Chapter 24-13 ("Employment of these devices [Service-owned tearing devices] is authorized for defensive purposes only when need is clearly demonstrated and use of a firearm is not immediately necessary.").

•    *Border Patrol Handbook* at Chapter 24-13 ("Aerosol tearing devices should never be fired at a subject's face from a distance of less than two feet.").

•    *Border Patrol Handbook* at Chapter 24-13 ("Any person sprayed with Mace must be examined as soon as possible by a physician if (1) their eyes have been sprayed; (2) there *is an*

14

indication of possible injury, or (3) any injury is claimed.").

- *The Law of Arrest, Search & Seizure Manual M69* at Chapter 3, Section (B)(2)(b) ("INS policy permits the use of non-deadly physical force only in self-defense, in defense of a fellow officer or third party, or when it is necessary to make an arrest or prevent an escape.").

- *Officers' Handbook, (M68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Use of Physical Force and 'Third Degree Methods'" ("The use of physical force or violence in handling detained aliens or other persons with whom official business is being conducted is permissible only in self-defense, in defense of another person, or to such an extent as is absolutely necessary in making an arrest or preventing an escape.").

- *Officers' Handbook, (M68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Relationship with the Public" ("Every Member of the public is entitled, as an absolute right, to courteous, fair, impartial, and sympathetic treatment from every employee of the service.").

- *Officers' Handbook, (M68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Poise and Dignity in Performance of Official Duties" ("The importance of poise, dignity, sympathy, honest simplicity, and self control even under the most severe provocation cannot be overemphasized. * * * He should never use profanity or vulgarity").

- *Officers' Handbook, (M68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Courtesy" ("The Service takes the realistic view that courtesy is necessary in our activities and its almost as much a job requirement as any other. It is your duty to be considerate and polite to the public at all times.").

- *Officers' Handbook, (M68): A Guide for Proper Conduct and Relationships with Aliens and the General Public* at Part II "Be Patient" (It is often difficult to be patient and to exercise self restraint in the face of verbal criticism or threatened physical violence, but such restraint and patience usually will enlist the support of witnesses and pay dividends in increased respect for the individual and the Service. Officers of this Service have the difficult problem of dealing with persons of a wide range of intelligence, mood, temperament and cultural backgrounds. No matter how exasperating the circumstances become, you must bear in mind that you are a representative of our Government and you must conduct yourself in a worthy manner.").

- *Firearms Policy: Administrative Manual Section 20.012* at Subsection 38 "Firearms Safety" ("Except for training exercises under strictly controlled conditions involving unloaded firearms, Service officers shall not point a weapon, loaded or unloaded, at anyone or anything, unless intending to discharge the weapon.").



•      Appendix to Operational Plan at pg. 5 ("Response to individual breech of 'Demonstrator Barricades': Individuals will be challenged, agents will use minimum force necessary to neutralize the threat to the security/safety of personnel assigned to this mission.").

10.   TRIAL EXHIBITS

Plaintiffs' Exhibit List is attached hereto at Tab A.   The United States' Exhibit List is attached hereto at Tab B.  Plaintiff Cobas adopts the Plaintiffs' Exhibit List attached at Tab A.

A.   Plaintiffs' Objections to the United States' Trial Exhibits

1.    A; R; H

2.    None

3.    None

4.    A

5.    A

6.    A

7.    None

8.    None

9.    None

10.   A; H

11.   A; H

12.   A; H

13.   A; H

14.   None

B.     Underline United States' Objection to the plaintiffs' Trial Exhibits

1-86.   A, R, H

87.     None

88.     None

89.     None

90.     None

91.     None

92.     A, R

93.     None

94.     A, R

95.     A

96.     A, R

97.     None

98.     None

99.     None

100.    None

101.    None

102.    None

103.    None

104.    None

105.    None

106.   None

107.   None

108.   R

109.   R

110.   A, R, H

111.   A, R, H

112.   A, R, H, UP

113.   A, R, H,UP

114.   A, R, H, UP

115.   A, R, H

11.   <u>TRIAL WITNESSES</u>

Plaintiffs' Witness List is attached hereto at Tab C.  Plaintiff Cobas adopts the Plaintiffs' Witness List attached at Tab C.  Because the names of the individuals primarily involved in the planning, organization, and direction of the rescue of Elian Gonzalez were set forth in the document entitled Federal Defendants' Witness List, which was filed under seal, in the case entitled *Lazaro Gonzalez, et al. v. Janet Reno, et al.*, Case No. 00-03621-CIV-MORENO, the United States' Witness List in this case also is being filed under seal in order to protect the law enforcement officers from retaliation.  The business addresses and telephone numbers have been provided under each heading unless the individual has a different address and telephone than other the heading or has resigned or retired from government service.  The United States' Witness List, Tab D, has been filed **UNDER SEAL**.

12.   <u>ESTIMATED TRIAL TIME</u>

Plaintiffs estimate that this matter will take 20 trial days.   The United States estimates that this matter will take 20 trial days.

13.    MAXIMUM AMOUNT OF ATTORNEY'S FEES

Under the Federal Tort Claims Act, attorney's fees are limited to 25 percent of any judgment awarded.  28 U.S.C. § 2678.

Date: _____

Approved:                                      _____
                                               K. MICHAEL MOORE
                                               UNITED STATES DISTRICT JUDGE

Date: _Nov. 19 2004_                           _Dale Wilcox  by SEH_
                                               PAUL ORFANEDES
                                               Attorney-in-Charge for Plaintiffs
                                               DALE WILCOX
                                               Co-counsel

Date: _Nov. 19, 2004_                          _Larry Klayman  by SEH_
                                               LARRY KLAYMAN
                                               Attorney-in-Charge for Plaintiff Cobas

Date: _Nov. 19, 2004_                          _Stephen Handler_
                                               STEPHEN E. HANDLER
                                               Attorney-in-Charge for the United States
                                               CLAYTON MAHAFFEY
                                               Trial Attorney

19



**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. 03-2588-CIV-MOORE/O'SULLIVAN

| | |
|---|---|
| DONATO DALRYMPLE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFFS' EXHIBIT LIST

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 1. | Medical Records/SF-95 Documentation concerning Plaintiff Donato Dalrymple. | A,R,H | |
| 2. | Medical Records/SF-95 Documentation concerning Plaintiff Hector S. Abelairas. | A,R,H | |
| 3. | Medical Records/SF-95 Documentation concerning Plaintiff Miguel Alejandro. | A,R,H | |
| 4. | Medical Records/SF-95 Documentation concerning Plaintiff Abel Alonso. | A,R,H | |
| 5. | Medical Records/SF-95 Documentation concerning Plaintiff Natalie Alonso. | A,R,H | |
| 6. | Medical Records/SF-95 Documentation concerning Plaintiff Nicole Alonso. | A,R,H | |
| 7. | Medical Records/SF-95 Documentation concerning Plaintiff Tanay Alonso. | A,R,H | |
| 8. | Medical Records/SF-95 Documentation concerning Plaintiff Leslie Alvarez. | A,R,H | |
| 9. | Medical Records/SF-95 Documentation concerning Plaintiff Elsa Anderson. | A,R,H | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 10. | Medical Records/SF-95 Documentation concerning Plaintiff Guillermo Arce. | A,R,H | |
| 11. | Medical Records/SF-95 Documentation concerning Plaintiff Joel Beltran. | A,R,H | |
| 12. | Medical Records/SF-95 Documentation concerning Plaintiff Teresa Benitez. | A,R,H | |
| 13. | Medical Records/SF-95 Documentation concerning Plaintiff Ledia Betancourt-Garcia. | A,R,H | |
| 14. | Medical Records/SF-95 Documentation concerning Plaintiff Thomas A. Camacho. | A,R,H | |
| 15. | Medical Records/SF-95 Documentation concerning Plaintiff Nancy Canizares. | A,R,H | |
| 16. | Medical Records/SF-95 Documentation concerning Plaintiff Arturo Castellanos. | A,R,H | |
| 17. | Medical Records/SF-95 Documentation concerning Plaintiff Blanca Nieves Chils. | A,R,H | |
| 18. | Medical Records/SF-95 Documentation concerning Plaintiff Juan Francisco Chils. | A,R,H | |
| 19. | Medical Records/SF-95 Documentation concerning Plaintiff Cosme Damian Diago. | A,R,H | |
| 20. | Medical Records/SF-95 Documentation concerning Plaintiff Darianne Diago. | A,R,H | |
| 21. | Medical Records/SF-95 Documentation concerning Plaintiff Idail Diago. | A,R,H | |
| 22. | Medical Records/SF-95 Documentation concerning Plaintiff Ramon Diago. | A,R,H | |
| 23. | Medical Records/SF-95 Documentation concerning Plaintiff Norma Dominguez. | A,R,H | |
| 24. | Medical Records/SF-95 Documentation concerning Plaintiff Eva Espinosa. | A,R,H | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 25. | Medical Records/SF-95 Documentation concerning Plaintiff Lenia Fernandez. | A,R,H | |
| 26. | Medical Records/SF-95 Documentation concerning Plaintiff Osmany (Osmani) Fernandez. | A,R,H | |
| 27. | Medical Records/SF-95 Documentation concerning Plaintiff Pastera Ferrer. | A,R,H | |
| 28. | Medical Records/SF-95 Documentation concerning Plaintiff Gilberto Gallarraga. | A,R,H | |
| 29. | Medical Records/SF-95 Documentation concerning Plaintiff Jose Antonio Freijo. | A,R,H | |
| 30. | Medical Records/SF-95 Documentation concerning Plaintiff Rosa Garcia. | A,R,H | |
| 31. | Medical Records/SF-95 Documentation concerning Plaintiff Ruben Garcia. | A,R,H | |
| 32. | Medical Records/SF-95 Documentation concerning Plaintiff Nixy Gomez. | A,R,H | |
| 33. | Medical Records/SF-95 Documentation concerning Plaintiff Carlos Alberto Gonzalez. | A,R,H | |
| 34. | Medical Records/SF-95 Documentation concerning Plaintiff Jose A. Gonzalez. | A,R,H | |
| 35. | Medical Records/SF-95 Documentation concerning Plaintiff Josefa R. Gonzalez. | A,R,H | |
| 36. | Medical Records/SF-95 Documentation concerning Plaintiff Yusleivy Gonzalez. | A,R,H | |
| 37. | Medical Records/SF-95 Documentation concerning Plaintiff Estelva G. Guevara. | A,R,H | |
| 38. | Medical Records/SF-95 Documentation concerning Plaintiff Pablo Hernandez. | A,R,H | |
| 39. | Medical Records/SF-95 Documentation concerning Plaintiff Yanet Huet. | A,R,H | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 40. | Medical Records/SF-95 Documentation concerning Plaintiff Martha Teresita Lara. | A,R,H | |
| 41. | Medical Records/SF-95 Documentation concerning Plaintiff Maria Eugenia Cabrera Lazo. | A,R,H | |
| 42. | Medical Records/SF-95 Documentation concerning Plaintiff Martha Lorenzo. | A,R,H | |
| 43. | Medical Records/SF-95 Documentation concerning Plaintiff Anaisa Machin. | A,R,H | |
| 44. | Medical Records/SF-95 Documentation concerning Plaintiff Morgan Marcos. | A,R,H | |
| 45. | Medical Records/SF-95 Documentation concerning Plaintiff Alfredo Martell. | A,R,H | |
| 46. | Medical Records/SF-95 Documentation concerning Plaintiff Lazaro Martell. | A,R,H | |
| 47. | Medical Records/SF-95 Documentation concerning Plaintiff Jose L. Martinez. | A,R,H | |
| 48. | Medical Records/SF-95 Documentation concerning Plaintiff Felix R. Meana. | A,R,H | |
| 49. | Medical Records/SF-95 Documentation concerning Plaintiff Troadio Mesa. | A,R,H | |
| 50. | Medical Records/SF-95 Documentation concerning Plaintiff Mario Miranda. | A,R,H | |
| 51. | Medical Records/SF-95 Documentation concerning Plaintiff Julio Mondelo. | A,R,H | |
| 52. | Medical Records/SF-95 Documentation concerning Plaintiff Martha Mondelo. | A,R,H | |
| 53. | Medical Records/SF-95 Documentation concerning Plaintiff Jorge A. Morales. | A,R,H | |
| 54. | Medical Records/SF-95 Documentation concerning Plaintiff Aray Noda. | A,R,H | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 55. | Medical Records/SF-95 Documentation concerning Plaintiff Zaida Nunez. | A,R,H | |
| 56. | Medical Records/SF-95 Documentation concerning Plaintiff Francisco Ondarza. | A,R,H | |
| 57. | Medical Records/SF-95 Documentation concerning Plaintiff Roberto Orama. | A,R,H | |
| 58. | Medical Records/SF-95 Documentation concerning Plaintiff Martha Lina Oropesa (Pumariega). | A,R,H | |
| 59. | Medical Records/SF-95 Documentation concerning Plaintiff Antonio Florentino Ortega. | A,R,H | |
| 60. | Medical Records/SF-95 Documentation concerning Plaintiff Yusledis Ortiz. | A,R,H | |
| 61. | Medical Records/SF-95 Documentation concerning Plaintiff Miriam Palacio. | A,R,H | |
| 62. | Medical Records/SF-95 Documentation concerning Plaintiff Cristobal Peraza. | A,R,H | |
| 63. | Medical Records/SF-95 Documentation concerning Plaintiff Madeleine Peraza. | A,R,H | |
| 64. | Medical Records/SF-95 Documentation concerning Plaintiff Sergio Perez-Barroto. | A,R,H | |
| 65. | Medical Records/SF-95 Documentation concerning Plaintiff Angel Pina. | A,R,H | |
| 66. | Medical Records/SF-95 Documentation concerning Plaintiff Jennifer Pina. | A,R,H | |
| 67. | Medical Records/SF-95 Documentation concerning Plaintiff Myra (Mayra) Pina. | A,R,H | |
| 68. | Medical Records/SF-95 Documentation concerning Plaintiff Melissa Pumarega. | A,R,H | |
| 69. | Medical Records/SF-95 Documentation concerning Plaintiff Nestor Ramos. | A,R,H | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 70. | Medical Records/SF-95 Documentation concerning Plaintiff Otoniel Ramos. | A,R,H | |
| 71. | Medical Records/SF-95 Documentation concerning Plaintiff Leonor Rivero. | A,R,H | |
| 72. | Medical Records/SF-95 Documentation concerning Plaintiff Maria A. Riveron. | A,R,H | |
| 73. | Medical Records/SF-95 Documentation concerning Plaintiff Pedro Riveron. | A,R,H | |
| 74. | Medical Records/SF-95 Documentation concerning Plaintiff Eduardo Rodriguez. | A,R,H | |
| 75. | Medical Records/SF-95 Documentation concerning Plaintiff Manuel Rodriguez. | A,R,H | |
| 76. | Medical Records/SF-95 Documentation concerning Plaintiff Maria E. Rodriguez (Riera). | A,R,H | |
| 77. | Medical Records/SF-95 Documentation concerning Plaintiff Marta Rodriguez. | A,R,H | |
| 78. | Medical Records/SF-95 Documentation concerning Plaintiff Patricia Rodriguez. | A,R,H | |
| 79. | Medical Records/SF-95 Documentation concerning Plaintiff Tomas A. Rodriguez. | A,R,H | |
| 80. | Medical Records/SF-95 Documentation concerning Plaintiff Gloria Sanchez. | A,R,H | |
| 81. | Medical Records/SF-95 Documentation concerning Plaintiff Ileana Santana. | A,R,H | |
| 82. | Medical Records/SF-95 Documentation concerning Plaintiff Diego Tintorero. | A,R,H | |
| 83. | Medical Records/SF-95 Documentation concerning Plaintiff Carlos Treto. | A,R,H | |
| 84. | Medical Records/SF-95 Documentation concerning Plaintiff Carmen Valdés. | A,R,H | |
| 85. | Medical Records/SF-95 Documentation concerning Plaintiff Divaldo Valdés. | A,R,H | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 86. | Medical Records/SF-95 Documentation concerning Plaintiff Miriam A. Zaldivar. | A,R,H | |
| 87. | Photographs taken by Defendant from aircraft depicting Gonzalez neighborhood. | None | |
| 88. | Photographs of raid taken by Associated Press Photographer Alan Diaz. | None | |
| 89. | Elian Gonzalez Media Footage | None | |
| 90. | Blanca Chils Videotape | None | |
| 91. | Photograph of Mario Miranda being held at gunpoint. | None | |
| 92. | Mark IX Magnum used in raid. | A,R | |
| 93. | Mark IX Magnum used during raid, currently in Defendant's possession. | None | |
| 94. | CS Gas Federal Riot Grenade used in raid. | A,R | |
| 95. | CS Gas Federal Riot Grenade used in raid. | A | |
| 96. | Israeli Gas Gun used during raid, currently in Defendant's possession. | A,R | |
| 97. | INS' handwritten notes regarding equipment for raid. | None | |
| 98. | INS' *Enforcement Standard: Use of Nondeadly Force*. | None | |
| 99. | INS' Appendix to Operational Plan. | None | |
| 100. | INS' Operational Plan. | None | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 101. | 8 C.F.R. 287.8. | None | |
| 102. | INS' *Investigator's Handbook*. | None | |
| 103. | INS' *Border Patrol Handbook*. | None | |
| 104. | *The Law of Arrest, Search & Seizure Manual M69*. | None | |
| 105. | INS *Officers' Handbook, (M68)*. | None | |
| 106. | INS' *Firearms Policy: Administrative Manual*. | None | |
| 107. | INS' handwritten notes regarding federal agents who deployed gas during the raid. | None | |
| 108. | Defendant's Responses to Plaintiffs' First Set of Interrogatories to Defendant. | R | |
| 109. | Defendant's Responses to Plaintiffs' Third Set of Requests for Production of Documents to Defendant. | R | |
| 110. | *Tear Gas – Harassing Agent or Toxic Chemical Weapon*, The Journal of the American Medical Association, Volume 262 (1989). | A,R,H | |
| 111. | James M. Atkinson, Advanced Chemical Weapons Text Book (1997). | A,R,H | |
| 112. | Transcript of Proceedings in *Ramirez v. Dep't. of Justice*, Docket number AT-1221-02-0114-W-1 (MSPB), and any exhibits used by Appellant and Respondent in that proceeding. | A,R,H,UP | |
| 113. | Initial Decision by US Merit Systems Protection Board dated May 24, 2002. | A,R,H,UP | |

| EXHIBIT NO. | DESCRIPTION | DEFENDANT'S OBJECTION | ADMITTED |
|---|---|---|---|
| 114. | Affidavit of Ricardo Ramirez submitted in Civil Action No. 01-4835-CIV-HUCK/TURNOFF. | A,R,H,UP | |
| 115. | Chuck Strouse, *Elian Plus One*," Miami New Times, April 19, 2001. | A,R,H | |

B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DONATO DALRYMPLE,            )
et al.                       )
        Plaintiffs,   )
                             )
                             )
        v.            )   Civil Action No. 03-20588-CIV-MOORE
                             )
                             )
UNITED STATES OF AMERICA,    )
                             )
        Defendant.    )
                             )
_____)

## UNITED STATES' EXHIBIT LIST

The United States intends to offer the following exhibits at trial:

|   | EXHIBITS | PLAINTIFFS' OBJECTIONS | ADMITTED |
|---|----------|------------------------|----------|
| 1 | Intelligence Architecture | A, R, H | |
| 2 | Operational Plan | None | |
| 3 | Operation Reunion (Appendix) | None | |
| 4 | Rules of Engagement | A | |
| 5 | Equipment List | A | |
| 6 | Schematic Drawing of Lazaro Gonzalez's House regarding the location of each law enforcement officer who entered the house | A | |
| 7 | Elian Gonzalez Media Footage | None | |
| 8 | Blanca Chils Videotape | None | |
| 9 | Photograph of Mario Miranda and INS Officers | None | |

| 10 | Memorandum regarding officers who deployed gas during operation | A, H | |
| 11 | Memorandum and diagram drafted by Richard McGahey regarding deployment of gas during operation | A, H | |
| 12 | Schematic drawing demonstrating the location of each plaintiff | A, H | |
| 13 | Schematic drawing demonstrating the location of each law enforcement officer | A, H | |
| 14 | Mark IV Fogger used by Richard McGahey | None | |
| 15 | Any and all exhibits offered by the plaintiffs | | |

2

Dated: _November 19, 2004_

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

PHYLLIS J. PYLES
Director, Torts Branch
Civil Division

STEPHEN E. HANDLER
Florida Bar No. A5500749
CLAY MAHAFFEY
Florida Bar No. A5500845
Trial Attorneys
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Washington, D.C. 20044
(202) 616-4279
(202) 616-5200 (fax)
Attorneys for the United States

3

C

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. 03-2588-CIV-MOORE/O'SULLIVAN

| | |
|---|---|
| DONATO DALRYMPLE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>PLAINTIFFS' WITNESS LIST</u>

### <u>Trial Witnesses.</u>

Plaintiffs expect to call all or some of the following witnesses at trial:

1.      Plaintiff Donato Dalrymple:  3408 Rose Hill Way, Lauderhill, Florida 33319, (954) 735-0202.

2.      Plaintiff Hector S. Abelairas:  690 W 70th Place, Hialeah, Florida 33014, (305) 821-2747.

3.      Plaintiff Miguel Alejandro:  1235 W 66th Street, Apt. 14, Hialeah, Florida 33012, (786) 273-1844.

4.      Plaintiff Abel Alonso:  16243 SW 83rd Street, Miami, Florida 33193, (305) 592-2063.

5.      Plaintiff Natalie Alonso (a minor):  16243 SW 83rd Street, Miami, Florida 33193.

6.      Plaintiff Nicole Alonso (a minor):  16243 SW 83rd Street, Miami, Florida 33193.

7.      Plaintiff Tanay Alonso:  16243 SW 83rd  Street, Miami, Florida 33193, (305) 592-2063.

8.      Plaintiff Leslie Alvarez:  6362 SW 138th  Path, Miami, Florida 33183, (305) 386-8728.

9.      Plaintiff Elsa Anderson:  9801 SW 54 Street, Miami, Florida 33165, (305) 666-3892.

10.     Plaintiff Guillermo Arce:  1335 SW 1st  Street, Miami, Florida  33125, (786) 267-3321.

11.     Plaintiff Joel Beltran:  3620 NW 4th Street, Miami, Florida  33125, (305) 971-7919.

12.     Plaintiff Teresa Benitez:  2720 SW 29th Court, Miami, Florida 33125, (954) 441-7505.

13.     Plaintiff Ledia Betancourt-Garcia:  20 Street, Hialeah, Florida 33010, (305) 885-9599.

14.     Plaintiff Thomas A. Camacho (a minor):  2271 NW 2nd Street, Miami, Florida 33125.

15.     Plaintiff Nancy Canizares:  6915 W 14th Court, Hialeah, Florida 33014, (305) 827-6935.

16.     Plaintiff Arturo Castellanos:  10500 NW 35th Court, Miami, Florida  33147, (305) 696-5221.

17.     Plaintiff Blanca Nieves Chils:  2377 NW 2nd Street, Miami, Florida  33125, (305) 643-3505.

18.     Plaintiff Juan Francisco Chils:  2377 NW 2nd Street, Miami, Florida  33125, (305) 643-3505.

-2-

19.     Plaintiff Cosme Damian Diago: 2313 NW 2nd Street, Apartment #3, Miami, Florida 33125, (305) 297-5694.

20.     Plaintiff Darianne Diago (a minor): 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125.

21.     Plaintiff Idail Diago: 2313 NW 2nd Street, Apartment #4, Miami, Florida  33125.

22.     Plaintiff Ramon Diago: 2313 NW 2nd Street, Apartment #4, Miami, Florida  33125.

23.     Plaintiff Norma Dominguez: 2313 NW 2nd Street, Apartment #4, Miami, Florida 33125, (305) 297-5694.

24.     Plaintiff Eva Espinosa: 301 W 17th Street, Hialeah, Florida 33010, (305) 887-4064.

25.     Plaintiff Lenia Fernandez: 2365 SW 11th Street, Miami, Florida 33135, (305) 245-3075.

26.     Plaintiff Osmany (Osmani) Fernandez: 423 W. 12th Place, Hialeah, Florida 33010, (786) 402-3887.

27.     Plaintiff Pastera Ferrer: 4270 SW 97th Avenue, Miami, Florida 33165, (305) 412-7277.

28.     Plaintiff Gilberto Gallarraga: 2313 NW 2nd Street, Miami, Florida 33125, (786) 317-0120.

29.     Plaintiff Jose Antonio Freijo: 430 SW  6th Avenue, Apartment #6, Miami, Florida 33125, (305) 545-7708.

30.     Plaintiff Rosa Garcia: 1590 W 2nd Avenue, Hialeah, Florida 33010, (305) 884-4423.

-3-

31.     Plaintiff Ruben Garcia:  675 East 23rd Street, Hialeah, Florida  33013, (305) 854-1826.

32.     Plaintiff Nixy Gomez:  451 NW 30th Place, Miami, Florida 33125, (305) 631-0042.

33.     Plaintiff Carlos Alberto Gonzalez:  9997 SW 68th Street, Miami, Florida  33173, (305) 386-2008.

34.     Plaintiff Jose A. Gonzalez:  10330 SW 37th Terrace, Miami, Florida  33165, (305) 776-2385.

35.     Plaintiff Josefa R. Gonzalez:  10330 SW 37th Terrace, Miami, Florida  33165, (305) 552-0831.

36.     Plaintiff Yusleivy Gonzalez:  2336 NW 2nd Street, Miami, Florida 33125, (239) 289-8045.

37.     Plaintiff Estelva G. Guevara:  45 NW24th Court, Miami, Florida 33125, (305) 643-5797.

38.     Plaintiff Pablo Hernandez:  9435 SW 181st Terrace, Miami, Florida 33157, (305) 969-2788.

39.     Plaintiff Yanet Huet:  2248 NW 48th Terrace, Miami, Florida 33125, (305) 631-0471.

40.     Plaintiff Martha Teresita Lara:  14920 S.W. 178th Terrace, Miami, Florida  33187, (305) 644-3477.

41.     Plaintiff Maria Eugenia Cabrera Lazo:  2271 NW 2nd Street, Miami, Florida 33125, (305) 631-1936.

42.     Plaintiff Martha Lorenzo:  1600 SW 1st Avenue, Miami, Florida 33129, (305) 856-5193.

43.     Plaintiff Anaisa Machin:  4390 16th Avenue, NE, Naples, Florida 34120, (239) 304-1840.

44.     Plaintiff Morgan Marcos 2771 SW 31st Avenue, Miami, Florida 33133, (786) 587-9896.

45.     Plaintiff Alfredo Martell:  870 SW 3rd Street, Apartment #4, Miami, Florida 33130, (786) 388-5907.

46.     Plaintiff Lazaro Martell (a minor): 870 SW 3rd Street, Apartment #4, Miami, Florida 33130.

47.     Plaintiff Jose L. Martinez:  4390 16th Avenue, NE, Naples, Florida 34120, (239) 304-1840.

48.     Plaintiff Felix R. Meana:  4261 SW 69th Avenue, Miami, Florida 33155, (786) 797-7319.

49.     Plaintiff Troadio Mesa:  6175 W 20th Avenue, Apartment H307, Hialeah, Florida 33012, (305) 821-1554.

50.     Plaintiff Mario Miranda:  765 NW 126th Court, Miami, Florida 33182, (786) 412-8055.

51.     Plaintiff Julio Mondelo:  140 NW 23rd Avenue, Miami, Florida 33125, (305) 643-1635.

52.     Plaintiff Martha Mondelo:  140 NW 23rd Avenue, Miami, Florida 33125, (305) 643-1635.

53.     Plaintiff Jorge A. Morales:  4025 SW. 7th Street, Miami, Florida  33134, (305) 461-4585.

54.     Plaintiff Aray Noda:  2313 NW 2nd Street, Apartment #4, Miami, Florida 33125, (305) 631-0818.

55.     Plaintiff Zaida Nunez:  5700 SW 108th Court, Miami, Florida 33173, (305) 275-2846.

56.     Plaintiff Francisco Ondarza:  9980 SW 71st Avenue, Miami, Florida 33156, (305) 968-9787.

57.     Plaintiff Roberto Orama:  2538 Washington Street, Hollywood, Florida 33024, (305) 258-2429.

58.     Plaintiff Martha Lina Oropesa (Pumariega):  1043 NW 133 Court, Miami, Florida 33182, (305) 225-3894.

59.     Plaintiff Antonio Florentino Ortega:  3520 NW 79th Street, Miami, Florida  33147, (786) 586-7348.

60.     Plaintiff Yusledis Ortiz:  870 SW 3rd Street, Apartment #4, Miami, Florida 33130, (786) 388-5907.

61.     Plaintiff Miriam Palacio:  2515 NW 32nd Street, Miami, Florida  33142, (305) 634-6573.

62.     Plaintiff Cristobal Peraza:  946 NW 135th Street, Miami, Florida 33182, (305) 552-9735.

63.     Plaintiff Madeleine Peraza:  946 NW 135th Street, Miami, Florida 33182,  (305) 552-9735.

64.     Plaintiff Sergio Perez-Barroto:  2352 NW 2nd Street, Miami, Florida 33125, (305) 541-4888.

65.     Plaintiff Angel Pina:  2354 NW 2nd Street, Miami, Florida 33125, (305) 649-0469.

66.     Plaintiff Jennifer Pina (a minor):  2354 NW 2nd Street, Miami, Florida 33125.

67.     Plaintiff Myra (Mayra) Pina:  2354 NW 2nd Street, Miami, Florida 33125, (305) 649-0469.

68      Plaintiff Melissa Pumarega:  1043 NW 133rd Court, Miami, Florida 33182, (305) 225-3894.

69.     Plaintiff Nestor Ramos:  5350 W 21st Court, Apartment #206, Hialeah, Florida 33016, (305) 556-6678.

70.     Plaintiff Otoniel Ramos:  6362 SW. 138th Path, Miami, Florida  33183, (305) 386-0326.

71.     Plaintiff Leonor Rivero:  2252 NW 4th Terrace, Miami, Florida 33125, (305) 644-8885.

72.     Plaintiff Maria A. Riveron:  740 NW 17th Avenue, Miami, Florida  33125, (305) 803-7342.

73.     Plaintiff Pedro Riveron:  2232 NW 2nd Street, Miami, Florida 33125, (305) 649-2091.

74.     Plaintiff Eduardo Rodriguez:  2319 NW 2nd Street, Miami, Florida 33125, (305) 631-8520.

75.     Plaintiff Manuel Rodriguez:  2255 NW 2nd Street, Miami, Florida 33125, (305) 649-9612.

76.     Plaintiff Maria E. Rodriguez (Riera):  380  NW 52nd Avenue, Miami, Florida  33126, (305) 226-7533.

77.     Plaintiff Marta Rodriguez:  2255 NW 2nd Street, Miami, Florida 33125, (305) 649-9612.

78.     Plaintiff Patricia Rodriguez:  2255 NW 2nd Street, Miami, Florida 33125, (305) 649-9612.

79.     Plaintiff Tomas A. Rodriguez:  11154 NW Flagler Lane, Miami, Florida 33172, (305) 225-7532.

80.     Plaintiff Gloria Sanchez:  367 Tamiami Canal Road, Miami, Florida, (305) 975-7168.

81.     Plaintiff Ileana Santana:  4261 SW 69th Avenue, Florida 33155, (305) 554-7077.

82.     Plaintiff Diego Tintorero:  17500 NW  52nd Avenue, Miami, Florida  33055, (305) 620-7672.

83.     Plaintiff Carlos Treto:  451 NW 30th Place, Miami, Florida 33125, (305) 631-0042.

84.     Plaintiff Carmen Valdés:  7940 NW 176th Street, Miami, Florida  33015, (305) 818-6363.

85.     Plaintiff Divaldo Valdés:  7940 NW 176th Street, Miami, Florida  33015,  (305) 818-6363.

86.     Plaintiff Miriam A. Zaldivar:  1879 SW 16th Street, Miami, Florida  33145, (305) 854-4148.

87.     Lazaro Gonzalez:  6341 SW 20th Street Miami, Florida 33155, (305) 265-8119.

88.     Lt. Armando Guzman:  Miami Police Department, Central Headquarters, 400 NW 2nd Avenue, Miami, Florida 33128., (305) 579-6263.

89.     Daniel Dargan: Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

90.     Peter Machin:  Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

91.     Michael Compitiello:  Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

92.     James Goldman: 2200 N. Commerce Parkway, Suite 206, Weston, Florida 33326 (954) 667-1866.

93.     Patrick Hudgens:  Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

94.     Richard McGahey: ICE Orlando Sub-Office, 9043 Tradeport Drive, Orlando, Florida 32827, (407) 816-4690.

95.     Frank Repinski:  Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

96.     James T. Spearman:  Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

97.     Richard Bendel:  Immigration and Customs Enforcement, Miami SAC Office, 8075 N.W. 53rd Street, Miami, Florida 33166, (305) 597-6000.

98.     Federal agents who executed the raid identified on Defendant's witness list, filed under seal, in the case of *Gonzalez, et al. v. Reno*, Case No. 00-3621-Civ-Highsmith (S.D. Fla.).

99.     Any witnesses identified by Defendant.

100.    Dr. Pedro Llanezza, 9195 S.W. 77th Street, Suite 120, Miami, FL  33173  (305) 598-9090.  (Only Plaintiff Sandra Cobas will call this witness.)

Plaintiffs also may call the following witnesses at trial:

1.      Angela Gonzalez:  6341 SW 20th Street Miami, Florida 33155, (305) 265-8119.

2.      Marisleysis Gonzalez:  6341 SW 20th Street Miami, Florida 33155, (305) 265-8119.

3.      Associated Press photographer Alan Diaz: Address and phone number unknown at this time, but will obtain as soon as possible.

4.      Kendall Coffey:  Grand Bay Plaza-Penthouse 2B, 2665 South Bayshore Drive, Miami, Florida 33133, (305) 857-9797.

5.      Manuel Diaz:  3500 Pan American Drive, Miami, Florida 33133, (305) 250-5300.

6.      Jose Garcia-Pedrosa: 1501 NW 9th Avenue, Miami, Florida 33161, (305) 243-5814.

7.      Border Patrol Agent Ricardo Ramirez: Government agent, address and phone number unknown.

8.      Any witnesses identified by Defendant.

Plaintiffs reserve the right to call additional witnesses for direct, impeachment and/or rebuttal purposes.  If other witnesses to be called at trial become known, their names, addresses and telephone numbers will be disclosed to Defendant's counsel in writing as soon as they are known.  Plaintiffs also reserve the right to use prior deposition and other testimony of any of the above-referenced witnesses should they prove to be unavailable at the time of trial.

D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DONATO DALRYMPLE, et al. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-20588-CIV-MOORE |
| | ) | |
| | ) | Magistrate Judge O'Sullivan |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | **FILED UNDER SEAL** |
| | ) | |
| | ) | |

## UNITED STATES' WITNESS LIST

Because the names of the individuals primarily involved in the planning, organization, and direction of the rescue of Elian Gonzalez were set forth in the document entitled Federal Defendants' Witness List, which was filed under seal, in the case entitled *Lazaro Gonzalez, et al. v. Janet Reno, et al.*, Case No. 00-03621-CIV-MORENO, the United States' Witness List in this case also is being

filed under seal in order to protect the law enforcement officers from retaliation.

Dated: *November 19, 2004*

                          Respectfully submitted,

                          PETER D. KEISLER
                          Assistant Attorney General
                          Civil Division

                          PHYLLIS J. PYLES
                          Director, Torts Branch
                          Civil Division


                          *Stephen Handler*
                          STEPHEN E. HANDLER
                          Florida Bar No. A5500749
                          CLAY MAHAFFEY
                          Florida Bar No. A5500845
                          Trial Attorneys
                          Torts Branch, Civil Division
                          U.S. Department of Justice
                          P.O. Box 888
                          Washington, D.C. 20044
                          (202) 616-4279
                          (202) 616-5200 (fax)
                          Attorneys for the United States

CERTIFICATE OF SERVICE

I hereby certify that on _November 19 2004_, I caused to be served upon the following counsel a true and correct copy of the Joint Pretrial Stipulation, including the plaintiffs' and United States' Witness and Exhibit Lists, via First Class Mail to:

Paul Orfanedes
Judicial Watch, Inc.
501 School Street
Suite 500
Washington, DC  20024
Attorney for the plaintiffs

Larry Klayman
P.O. Box 31007
Miami, FL  33231

Stephen E. Handler